CUYAHOGA COUNTY SUPPORT ENFORCEMENT AGENCY, Appellant,

v.

LOZADA et al, Appellees.

[Cite as *Cuyahoga Cty. Support Enforcement Agency
v. Lozada* (1995), 102 Ohio App.3d 442.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 67463, 67553, 67639, 67654 and 67659.

Decided July 10, 1995.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *Timothy Spackman*, Assistant Prosecuting Attorney, for appellant.

*David Lozada*, pro se.

*Gerald Baylor*, pro se.

*Curtis Looney*, pro se.

*Angelina Martinez*, pro se.

*Julio Martinez*, pro se.

*Teresa Underwood*, pro se.

DONALD C. NUGENT, Judge.

This is a consolidated appeal brought by the Child Support Enforcement Agency of Cuyahoga County from decisions of the Juvenile Division of the Cuyahoga County Court of Common Pleas. All five cases were filed with the juvenile court as objections to determinations of child support amounts made by the Cuyahoga Support Enforcement Agency ("CSEA"). All five filings were made under R.C. 3111.22(C), which establishes the procedure by which parties can initiate a judicial review of the CSEA's administrative determination of child support.

The procedures through which these five actions came before this court are substantially similar except for one difference. The matter of *Lozada* encompasses two of the actions presented before this court in this consolidated appeal. In *Lozada* (case Nos. 67463 and 67553), Jacqueline Glenn, the mother/obligee, filed the objection with the juvenile court to the award of child support ordered to be paid by David Lozada for the support of his son, Tevin Glenn. Lozada was

found to be the father of Tevin Glenn through an administrative determination of paternity.[1]

In the three remaining actions, *Underwood, Wright* and *Martinez,* the fathers/obligors filed their objections with the juvenile court to the award of child support. In *Underwood* (case No. 67654), Gerard Baylor filed his objection to the award of child support ordered to be paid for the support of his son, Brandon Underwood. Baylor was found to be the father of Brandon Underwood through an order made by an administrative hearing officer. In *Wright* (case No. 67639), Curtis Looney filed his objection with the juvenile court to the award of child support ordered to be paid for the support of his daughter, Whitney Wright. Looney was found to be the father of Whitney Wright through an order made by an administrative hearing officer. In *Martinez* (case No. 67659), Julio Martinez filed his objection with the juvenile court to the award of child support ordered to be paid for the support of his son, Hidarmis Martinez. Julio Martinez was found to be the father of Hidarmis Martinez through an order made by an administrative hearing officer.

Following the objections to the administrative determinations of child support, the juvenile court made the following determination in each of the five actions:

In *Lozada,* the referee added the CSEA as a party to the action and allowed the Cuyahoga County prosecutor's office to make an oral notice of appearance as attorney of record to represent the interests of the CSEA. As attorney of record, the prosecutor entered into discovery to determine the income of the obligor, David Lozada. The trial judge disapproved the referee's joining of the CSEA as a party and removed the CSEA, along with the prosecutor's office, as a party. Due to this fact, neither the prosecutor's office nor the CSEA was notified of subsequent hearings before the juvenile court, nor were they present for the argument before the court.

In the three remaining actions, the juvenile court dismissed the CSEA as a party; however, the court relied upon different statutes as authority for dismissing the CSEA.

In *Wright* and *Martinez,* the juvenile court dismissed the CSEA on the basis that there was no authority for it to be a party to the action under R.C. 3111.22(C). However, in *Underwood,* the juvenile court dismissed the CSEA on the basis that it was not a proper party to bring the action under R.C. 2151.231.

Appellant separately and timely filed its notices of appeal in all five cases. On October 25, 1994, finding that the cases represented similar issues of law and fact,

---

1. A blood test was administered, and it was medically determined that there was a 99.97 percent probability that Lozada was the father of Tevin Glenn.

this court consolidated the above cases on motion of the appellant. Appellant has presented the following six assignments of error for our review [2]:

"I. The trial court erred in dismissing the Cuyahoga Support Enforcement Agency as a party in these actions.

"II. The trial court's dismissal of the CSEA as a party in an action for child support pursuant to R.C. 3111.21(B)(2) and or R.C. 3111.22(C)(4)(b) via R.C. 2151.231 violated the Equal Protection Clauses of the United States and Ohio Constitutions, when a similarly situated residential parent who legitimizes a child through probate court is entitled to have the CSEA advocate for a proper child support order in the juvenile court pursuant to R.C. 3111.20(C) via R.C. 2151.231.

"III. The trial court erred in dismissing the state of Ohio, CSEA, from these actions without notice, as CSEA is a real party in interest.

"IV. The trial court erred by not following the mandatory requirements of R.C. 3113.215 in ordering a deviation in child support.

"V. Whether the trial court erred in failing to comply with the requirements of R.C. 3113.217(C) in not issuing a separate order regarding health insurance.

"VI. The trial court erred in dismissing the state of Ohio, CSEA, *sua sponte* where the defendants did not raise the defense in any pleading."

I

The disposition of appellant's assignments of error requires a brief understanding of the legislative history of child enforcement laws both in the state and federal system.

All plans for child support enforcement that are designed by the states must meet the mandates of Title IV–A and Title IV–D of the Social Security Act of 1975, codified in Sections 601 through 615 and 651 through 666, Title 42, U.S.Code. The IV–D amendment provides an outline for state programs to follow. These state programs are to be designed for "[t]he purpose of enforcing the support obligations owed by absent parents to their children." Section 651, Title 42, U.S.Code. Specifically, Section 654 states as follows:

"A State plan for child support must—

" * * *

"(6) provide that (A) the child support collection or paternity determination services established under the plan *shall be made available to any individual not otherwise eligible for such services upon application filed by such individual*

---

2. As a preliminary matter, we note that no appellee's brief has been filed in the present consolidated appeals.

*with the State, including support collection services for the spouse (or former spouse) with whom the absent parent's child is living* (but only if a support obligation has been established with respect to such spouse, and only if the support obligation established with respect to the child is being enforced under the plan) * * *; [and]

"(7) provide for entering into cooperative arrangements with appropriate courts and law enforcement officials (A) to assist the agency administering the plan, including the entering into of financial arrangements with such courts and officials *in order to assure optimum results under such program* * * *[.]" (Emphasis added.)

The codification of the state of Ohio's programs for determining parentage and child support enforcement mandated under Title IV–D is found under R.C. Titles 31 and 51. Specifically, R.C. 5101.31(A) states as follows:

"The division of child support is hereby created in the department of human services. The division shall establish and administer a program of child support enforcement, which program shall meet the requirements of Title IV–D of the 'Social Security Act,' 88 Stat. 2351 (1975), 42 U.S.C. 651, as amended, and any rules promulgated under Title IV–D. The program of child support enforcement shall include, but not be limited to, the location of absent parents, the establishment of parentage, the establishment and modification of child support orders and medical support orders, the enforcement of support orders, and the collection of support obligations."

Prior to the amendments of R.C. Chapters 3111 and 3113, the role of the child support enforcement agencies in Ohio was limited. The effectiveness of child support enforcement laws was greatly expanded by the changes to R.C. 3111.01 through R.C. 3111.19 with the enactment of Am.Sub.S.B. 10, effective July 15, 1992. Before the General Assembly's amendments and additions, the role of child support enforcement agencies in the collection of child support awards was inadequate to fulfill the mandates listed in Title IV–D.

For example, in *State ex rel. Athens Cty. Dept. of Human Serv. v. Wolf* (1991), 77 Ohio App.3d 619, 603 N.E.2d 252, the court of appeals, construing then-existing R.C. 3111.04, held that county agencies did not have standing to initiate a parentage action. This holding was a correct and proper conclusion under the wording of R.C. 3111.04 as it existed at that time. However, not allowing a child support enforcement agency to initiate a paternity determination falls short of the mandates of Section 654(6), Title 42, U.S.Code, quoted above. Therefore, the statute, as it was previously written, did not satisfy the mandates of Title IV–D.

The holding of *Athens Cty.* was subsequently bypassed by the General Assembly with the enactment of Am.Sub.S.B. 10 and the enactment of the present R.C. 3111.04, which states:

"(A) An action to determine the existence or nonexistence of the father and child relationship may be brought by * * * the child support enforcement agency of the county in which the child resides if the child's mother is a recipient of public assistance * * *."

With the enactment of R.C. 3111.04, the General Assembly clearly included child enforcement agencies as parties in parentage actions. This addition allowed county departments of human services to initiate parentage actions, thus facilitating greater compliance with the federal requirements in Title IV–A and Title IV–D of the Social Security Act of 1975.

Since the enactment of the Social Security Act of 1975, the Ohio General Assembly has grappled with the task of meeting the mandates expressed therein. It has been the purpose of the General Assembly to create a program through which residential parents can easily seek out the absent parents who owe support obligations to their children. As stated in Title IV–D, the overriding concern of this program is to ensure optimum results in helping parents secure the proper amount of child support from the absent parents of their children. The amendments contained within Am.Sub.S.B. 10 have allowed the Ohio program to more effectively meet these federal mandates; however, the legislation still has not entirely met the mandates of the federal law. The guidelines which the Ohio program follow in carrying out its child support enforcement duties are contained primarily within R.C. Chapters 3111 and 3113. We must therefore consider the purpose of these chapters in meeting the federal mandates in determining whether or not the CSEA was intended to be a party to all child support enforcement actions.

## II

Although there is no statute which explicitly states that the CSEA must be a party to every child support enforcement action, it is appellant's contention that the rules of construction allow this court to construe R.C. 2151.231 along with R.C. 3111.01 *et seq.* to find that the General Assembly intended that the CSEA be a proper party to all child support enforcement actions.

Both R.C. 2151.231 and 3111.22 define the parties that can bring an action for the payment of child support; however, they differ in one aspect. R.C. 2151.231 [3]

---

3. R.C. 2151.231 provides:

defines the general method when a "parent, guardian, or custodian of a child" may bring an action in juvenile court for child support; *i.e.*, when parentage is already established. On the other hand, R.C. 3111.22[4] defines the method to follow when parentage is unknown or contested and must be determined by a court or through an administrative determination hearing before the CSEA. In other words, R.C. 2151.231 deals with situations where parentage has been previously established or presumed, and R.C. 3111.22 deals with situations where parentage of the child is at question by the parties and must be determined by law.

It is clear that the procedure outlined in R.C. 3111.22 is to be followed in cases involving administrative or court determinations of paternity. After parentage has been administratively determined, R.C. 3111.22(C) sets forth the manner by which an administrative officer may make an award of child support to the residential parent. Upon the determination of the administrative officer's award, R.C. 3111.22 allows either party to object to that award by bringing an action in juvenile court as provided under R.C. 2151.231.

## A

In the present case, appellant asserts that R.C. 2151.231 and 3111.01 through 3111.99 are *in pari materia* and must be construed together. Appellant asserts that when these statutes are construed together, it is clear that the General Assembly intended for the CSEA to be a party to all actions for child support enforcement.

 Initially, we recognize that it is a well-settled principle of law that courts have the authority to construe statutes in order to effectuate their intent. *Lessee of Burgett v. Burgett* (1824), 1 Ohio 469, 480. However, in construing statutes, courts are required to follow the rules of construction as found in R.C. Title 1. Of primary importance to the determination of the present case is R.C. 1.11, which provides in part as follows:

> "The parent, guardian, or custodian of a child may bring an action in juvenile court under this section requesting the court to issue an order requiring a parent of the child to pay an amount for the support of the child without regard to the marital status of the child's parents."

4. R.C. 3111.22(A)(1) provides as follows:

> "Except as otherwise provided in division (A)(2) of this section, no person may bring an action under sections 3111.01 to 3111.19 of the Revised Code before requesting an administrative determination of the existence or nonexistence of a parent and child relationship from the child support enforcement agency of the county in which the child or the guardian or legal custodian of the child resides."

"Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice." [5]

The business of writing statutes is often a complex and cumbersome affair. In determining the intent of the General Assembly, it is to be presumed that a code of statutes relating to one subject is governed by one spirit and policy and intended to be consistent and harmonious in its several parts. See *Cincinnati v. Connor* (1896), 55 Ohio St. 8; *Cincinnati v. Guckenberger* (1899), 60 Ohio St. 353, 370, 54 N.E. 376, 381.

■ The underlying spirit and policy of both R.C. Chapter 3111 and 3113 are concern for "the best interest of the child." *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496. Following this concern and the mandates of Title IV–A and Title IV–D, the General Assembly attempted to design a program of child support enforcement that would protect "the best interest of the child." It would be virtually impossible to demand that in so doing the General Assembly literally spell out every possible circumstance encompassed by "the best interest of the child." Rather, it is the purpose of the courts to interpret the General Assembly's intent as it applies to the scores of circumstances which arise. Therefore, with the foregoing considerations in mind, we begin our discussion of the appellant's assignments of error.

## B

■ In its first, second, third and sixth assignments of error, appellant contests the dismissal of the CSEA as a party to the actions brought in juvenile court by appellees. Appellant contends that it is error for the juvenile court to dismiss the CSEA as a party to actions for child support, as it is the CSEA's statutory duty to ensure the propriety of *all* child support awards. Further, appellant contends that dismissing the CSEA as a party in some actions, while allowing it as a party in others, is a violation of the Equal Protection Clause. As these assignments of error necessarily encompass the same issue brought forward in all five actions, we will discuss them together.

Appellant contends that the trial court's action in allowing the CSEA as a party where the residential parent legitimates his child through probate court but dismissing the CSEA as a party where the residential parent legitimates his child

---

5. The "liberal construction" theory has recently been followed by this court in relation to R.C. Chapter 3111. See *Seegert v. Zietlow* (1994), 95 Ohio App.3d 451, 642 N.E.2d 697.

through the administrative process violates the Equal Protection Clauses of the United States Constitution [6] and Ohio Constitutions [7].

R.C. 2105.18 sets forth the parties who may file an acknowledgement of paternity with the probate court. It states as follows:

"(A) The natural father, natural mother, or other custodian or guardian of a child, [or] a *child support enforcement agency* * * * in person or by mail, may file an acknowledgement of paternity in the probate court * * *." (Emphasis added.)

When a parent legitimates his or her child through the probate court, R.C. 3111.20(C) empowers the CSEA to ensure that the proper amount of child support is paid by the nonresidential parent. R.C. 3111.20 states as follows:

"(C) * * * After the probate court enters the acknowledgement upon its journal or the father voluntarily signs the birth certificate as an informant as provided in section 3705.09 of the Revised Code, the parent with custody of the child, the child's guardian or legal custodian, *or the child support enforcement agency of the county in which the child or the guardian or legal custodian of the child resides* may file a complaint pursuant to section 2151.231 of the Revised Code in the juvenile court of that county requesting the court to order the parent who neglects or does not assume the parental duty of support to pay an amount for the support of the child, may contact a child support enforcement agency for assistance in obtaining the order, or may request an administrative officer of a child support enforcement agency to issue an administrative order for the payment of child support * * *." (Emphasis added.)

Therefore, under R.C. 3111.20, it is clear that the CSEA is a proper party in cases where the child is legitimated in probate court. Additionally, R.C. 3111.07 clearly allows the CSEA to be a party where the support of the child has been assumed by the state. It states as follows:

"(A) The natural mother, each man presumed to be the father * * *, each man alleged to be the natural father, and, if the party who initiates the action is a recipient of public assistance * * * or if the responsibility for the collection of support for the child who is the subject of the action has been assumed by the child support enforcement agency * * *, the child support enforcement agency of the county in which the child resides shall be made parties to the action brought pursuant to sections 3111.01 to 3111.19 of the Revised Code * * *."

---

6. The Fourteenth Amendment to the United States Constitution provides:

 "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

7. Section 2, Article I of the Ohio Constitution provides:

 "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have a right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly."

The general plan presented by R.C. 3111.07 is that the CSEA shall represent the state in proceedings regarding child support for people on public assistance. *Crittendon v. Crittendon* (1992), 82 Ohio App.3d 484, 489, 612 N.E.2d 759, 762–763. The reason for joining the CSEA and its attorneys as parties in these actions is for the state to be able to protect its pecuniary interest and ensure that the proper amount of child support funds are recovered from the parents of children who have already received public assistance.[8]

The presence of the CSEA at these proceedings is important in two ways. One, it fulfills the major concern of the state by ensuring that the best interest and welfare of the child are represented at all stages of the proceedings, and, two, it ensures that the pecuniary interest of the state is protected by guaranteeing that the appropriate methods and factors of support are considered at the proceedings.

With R.C. 3111.20 and 3111.07, there are specific statutes which allow the CSEA to be a party in situations where the child has been legitimated in probate court or is the recipient of public assistance. However, there is no statute which specifically includes the CSEA as a party where the parentage of the child was established through the administrative process. For this reason, the juvenile court either dismissed the CSEA or did not allow it to join as a party to the actions herein.

Appellant contends that this difference between probate court legitimation and administrative legitimation results in some residential parents enjoying the services of the CSEA and the prosecutor's office while other residential parents do not enjoy those services. In essence, appellant contends that this result would punish those parents who, in an attempt to obtain support for their children, are often forced to avail themselves of a legitimacy finding through the administrative process. This, appellant contends, is a violation of the Equal Protection Clauses of the Ohio and United States Constitutions.

■ Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution guarantee every person equal protection under the law. Both constitutional provisions place the same limits on governmental classifications. *Kinney v. Kaiser Aluminum & Chem. Corp.* (1975), 41 Ohio St.2d 120, 123, 70 O.O.2d 206, 208, 322 N.E.2d 880, 882–883; *McQueen v. Hawkins* (1989), 63 Ohio App.3d 243, 245, 578 N.E.2d 539, 540. "The equal protection guarantee is designed to ensure that similar people are treated in a similar fashion." *Lewis v. Chapin* (1994), 93 Ohio App.3d 695, 703, 639 N.E.2d

---

8. Individuals receiving public assistance are required to assign their rights to support payments to the state department of human services. R.C. 5107.07(A); Section 602(a)(26)(A), Title 42, U.S.Code.

848, 853; *McQueen, supra,* citing *Colgate v. Harvey* (1935), 296 U.S. 404, 422–423, 56 S.Ct. 252, 255–256, 80 L.Ed. 299, 307. However, the constitutional guarantee only prevents invidious discrimination. *Harris v. McRae* (1980), 448 U.S. 297, 322, 100 S.Ct. 2671, 2690–2691, 65 L.Ed.2d 784, 808. "Unless a fundamental right or suspect classification is involved, the classification is constitutional if it is rationally related to a legitimate end of government." *Lewis, supra,* 93 Ohio App.3d at 704, 639 N.E.2d at 853–854.

Therefore, we must first determine if this statutory omission of the CSEA as a party in these actions is rationally related to the legitimate end of government expressed by R.C. Chapters 3111 and 3113, the best interests of the children.

As previously stated, the pecuniary interest of the state in child support matters arises from the probability that the state may be able to recoup some of the funds which have already been expended in support of the child. See *Crittendon, supra; Vance v. Banks* (1994), 94 Ohio App.3d 475, 640 N.E.2d 1214. Since the state is responsible for the support of these children, any money recouped from their parents is money that the state can return to the public treasury. However, through a consideration of R.C. Chapter 3111 in its entirety, it is clear that whether or not a child is a recipient of public assistance, the state continues to maintain a pecuniary interest in seeing that child support is paid by the parent/obligor and paid in the proper amount.

State statutes require that support payments be made to a department of human services or a child support enforcement agency, regardless of whether the parent is a public assistance recipient. See R.C. 3111.28 and 3113.06. After the payment of support is made by the parent/obligee, the CSEA disburses the proper amount of support to the child. It is this regulation of child support orders which presents the CSEA with a legitimate governmental interest in ensuring that all child support orders are properly satisfied by the obligor.

This state interest is most evident in the method of review set forth for support orders. The review of support orders by the CSEA is clearly presented in R.C. 3111.27, which states as follows:

"(A) * * * [T]he department of human services shall adopt rules * * * for determining when existing administrative support orders should be reviewed to determine whether it is necessary or in the best interest of the child * * * to modify the administrative support order and to calculate any modification * * *."

This statute plainly empowers the CSEA to administratively review all existing child support orders whenever it deems it is in the best interest of the child. With this empowerment, the General Assembly plainly gave the CSEA the power to review and modify support orders if it determined that those orders were not in the best interest of the child. At the very least, this empowerment shows that

it is necessary for the CSEA to be a party to ensure not only that the child's best interests are protected but also that the pecuniary interests of the state are protected.

The state's pecuniary interest in all child support orders derives from its legitimate governmental duty to protect the public fisc. While the primary responsibility for the protection of children lies with their parents, it is the responsibility of the state to protect the welfare of its citizens. It is the state's welfare responsibility that requires it to step in to take the place of a parent who abdicates his or her responsibility to support a child. It is also this welfare responsibility that requires the state to properly protect public funds, hence creating a pecuniary interest in child support actions which could have the result of depleting or injuring the public fisc.

This pecuniary interest of the state was clearly delineated by the United States Sixth Circuit Court of Appeals in *Carelli v. Howser* (1991), 923 F.2d 1208, at 1210–1211. The holding of *Carelli* is instructive for our purposes herein. Construing the rights encompassed within Title IV–D of the Social Security Act, the *Carelli* court stated as follows:

" * * * The state's enforcement actions for non-AFDC recipients enable the state to obtain child support payments in order to obviate the potential need for such individuals to collect AFDC.

" * * *

" * * * We see no reason to conclude that the statute must be read to protect needy families with children to the exclusion of protecting the public fisc or vice versa. It seems eminently reasonable that Congress intended both purposes to be served. Indeed, needy families have as much interest in the protection of the public fisc as anyone else."

Most instructive to our discussion regarding the state's pecuniary interest are the remarks contained within footnote 4 of *Carelli*:

"Illuminating on this issue are the remarks of Representative Conable during the debate on the floor of the House prior to the adoption of the 1984 amendments to Title IV–D:

" 'A major focus in the child-support debate during the 98th Congress has been the underlying purpose and intent behind the child-support enforcement program. Some maintained that it should aim primarily at recovering AFDC expenses incurred because families without child support must rely on welfare. Others contended that this Federal program ought to be available as a service to all families in need of assistance in securing child support, regardless of whether they receive welfare or not. This conference agreement reflects the rationale

stated in both House and Senate bills which reaffirms that the program should be available to all who need services. \* \* \*'

"*Carelli* [*v. Howser* (S.D.Ohio 1990) ], 733 F.Supp. [271] at 276–77 (quoting 130 Cong.Rec H23040 (daily ed. Aug. 8, 1984))." *Id.* at 1211, fn. 4.

Hence, the holding of *Carelli* finds that the state of Ohio has a legitimate governmental interest in enforcing all child support actions. Moreover, *Carelli* defines part of this interest as the protection of the public fisc.

We agree with the ruling of the *Carelli* court and find that the state of Ohio has an interest in all child support actions by virtue of either the residential parent's assignment of rights as public assistance recipients or the interest in enforcing child support awards in order to protect and ensure the integrity of the public fisc.

Further, we hold that it is a violation of the Equal Protection Clauses of the United States and Ohio Constitutions to allow the aid and support of the CSEA in an action for child support brought by parents who have established their parentage through the probate court and residential parents who are on public assistance while denying the aid and support of the CSEA to parents who have established their parentage through the administrative process.

The legitimate state interest to be served in both situations is the proper collection of child support from those people who are legally bound to pay for the support in order to serve the best interest of the children and protect the public fisc, as defined in *Carelli v. Howser, supra.*

We find no rational basis to exclude the child support enforcement agencies as parties in some of these actions and allow them in others. It is the statutory duty of the child support enforcement agency of each county to develop a method for the proper collection and enforcement of child support. R.C. 5101.31. Only by being joined as a party to these child support actions can the support enforcement agencies properly effectuate that duty, thereby protecting the best interest of the children and the public fisc.

Moreover, the exclusion of the CSEA as a party has the effect of improperly giving some children and parents the advantage of representation by the CSEA while denying in contravention of the Equal Protection Clauses that same representation to other children and parents who are similarly situated. This is not a result that is in the best interest of the children, nor is it rationally related to a legitimate end of government.

From a thorough reading of R.C. Chapters 3111 and 3113, together with the mandates of Title IV–A and Title IV–D of the Social Security Act, we find that the General Assembly intended that the child support enforcement agencies be parties to all actions for the collection of child support; any other result would

hinder the legitimate state interest spelled out by the General Assembly for the enforcement of child support orders as well as the mandates of Title IV–A and Title IV–D.

Therefore, the dismissal of the CSEA in all of the actions presented before this court was improper, as it was against the Equal Protection Clauses of the United States and Ohio Constitutions.

Accordingly, we find appellant's first, second, third and sixth assignments of error well taken.

## III

Appellant's fourth assignment of error argues that the trial court erred by not following the requirements of R.C. 3113.215.[9]

R.C. 3113.215 outlines the procedure through which a court is to determine the proper calculation of child support obligations. The statute spells out the criteria, figures, income considerations and mathematical calculations to be used in order to properly calculate child support orders. In addition, the statute spells out the exact method by which a court can order a deviation in the figure arrived at through the mathematical calculations. R.C. 3113.215(B)(1) states as follows:

"[T]he amount of child support that would be payable under a child support order, as calculated pursuant to the basic child support schedule in division (D) of this section and pursuant to the applicable worksheet * * * is rebuttably presumed to be the correct amount of child support due, and the court or agency shall order that amount to be paid as child support unless both of the following apply with respect to an order issued by the court:

"(a) The court, after considering the factors and criteria set forth in division (B)(3) of this section, determines that the amount calculated * * * would be unjust or inappropriate and would not be in the best interest of the child.

"(b) The court enters in the journal the amount of child support calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet * * * its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination."

In *Martinez*, the annual amount of presumed child support that was calculated for two children was $5,039. The trial court, however, ordered child support in the amount of $4,680. In *Underwood*, the annual amount of presumed child

---

9. This assignment of error only pertains to two of the four cases brought in this appeal: *In re Martinez* and *In re Underwood*.

support that was calculated was $4,200. The trial court, however, ordered child support in the amount of $3,600. In both cases, neither the referee's report nor the trial court's entry indicated any findings of fact supporting these downward deviations.

The Ohio Supreme Court has explicitly dealt with the latitude which R.C. 3113.215 gives to trial courts in determining awards of child support. In *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, the court held, in paragraphs two and three of its syllabus:

"2. The terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects.

"3. Any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination."

Since the holding in *Marker*, the General Assembly has changed some of the wording of R.C. 3113.215; however, the requirements of the section regarding deviations to child support orders still remain the same.

■ In *Martinez*, the referee noted that the father offered to pay $4,550 per year. The referee went on to note that "that figure is within 10%" of the actual annual obligation required by the worksheet. This note by the referee requires further analysis. It appears that the referee is allowing a deduction of "within 10%" without any further explanation. However, the strict compliance with R.C. 3113.215 required by *Marker* has not been achieved. Neither the referee nor the trial court offered any findings of fact or other reasons for the downward deviation. Nor were there any reasons to show why the amount calculated by the child support schedule would not be in the best interest of the child. The referee's notice that the amount "is within 10%" of the actual obligation contains nothing to show that this downward deviation of ten percent was made in the best interest of the child.

The acceptable procedure for ordering an amount of child support which deviates from the amount "rebuttably presumed" to be the correct amount is for the court to fully comply with the requirements of R.C. 3113.215(B)(1)(a) and (b). *Marker, supra*, 65 Ohio St.3d at 141, 601 N.E.2d at 497–498.

■ In *Underwood*, the referee listed the father/obligor's income as $22,000. In addition, the referee deducted $1,800 from the father/obligor's gross income, labeling it as "school loans." The trial court deducted the father/obligor's school loans as an ordinary and necessary business expense for self-employed individuals. This deduction from the schedule was improper for two reasons. One, the father/obligor is not self-employed; rather, he is employed at LCI Corporation as

an Installation Coordinator with a base rate of $10.67 per hour, which is a gross yearly income of $22,193.60. Two, school loans do not qualify as ordinary and necessary business deductions for self-employed individuals. This inappropriate deduction by the trial court caused the schedule to be improperly calculated, resulting in a deviation of close to $70 per month in the amount of child support due from the father/obligor.

As stated in *Marker, supra,* the computation of a child support worksheet must be strictly complied with in order to protect the "best interest of the child." Following the holding of *Marker,* we find that the present cases of *Martinez* and *Underwood* present facts which show that the trial court did not strictly comply with the deviation procedures contained within R.C. 3113.215.

Accordingly, appellant's fourth assignment of error is well taken. We reverse and remand the decision of the court in *Underwood* for a recalculation by the juvenile court of the amount of child support owed by the father/obligor. In addition, we reverse and remand the order of the court in *Martinez* for a determination pursuant to R.C. 3113.215 of whether the amount of current child support payments and the deviation made by the juvenile court are just and appropriate and in the best interest of the child.

## IV

Appellant's fifth assignment of error argues that the trial court erred in not issuing a separate order regarding health insurance. This assignment of error concerns all five of the actions presented in this case.

R.C. 3113.217(C), states as follows:

"(C) In any action or proceeding in which a child support order is issued or modified * * * [t]he court shall issue a separate order that includes all of the following:

"(1) A requirement that the obligor under the child support order obtain health insurance coverage for the children who are the subject of the child support order * * *."

In all of the actions presented within the consolidated appeal before this court, the trial court failed to issue a separate order encompassing the myriad of requirements outlined in the thirteen separate paragraphs of R.C. 3113.217. This failure by the trial court to comply with the demands of R.C. 3113.217 is plain error.

Accordingly, appellant's fifth assignment of error is well taken. We therefore reverse and remand all of the causes before us to the juvenile court to issue a

separate order to obtain health insurance pursuant to the requirements of R.C. 3113.217.

*Judgments reversed*
*and causes remanded.*

PORTER and O'DONNELL, JJ., concur.