OPINION
{¶ 1} Appellant Staci M. Hedges appeals from the decision of the Fairfield County Court of Common Pleas, Domestic Relations Division, which established Appellee Stephen Shockley as the father of her minor child, Peyton Shockley. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant gave birth to Peyton Shockley in 2001. Appellee-father thereafter requested an administrative determination of paternity through the Fairfield County CSEA ("FCCSEA"). At the request of Staci Hedges, the administrative proceeding was dismissed so that a paternity complaint could be filed with the common pleas court.
 {¶ 3} On January 22, 2004, FCCSEA filed a complaint to establish paternity of Peyton. On March 1, 2004, appellant filed a motion to dismiss on the basis that she is not a recipient of public assistance or of services under Title IV-D of the Social Security Act. On March 18, 2004, the magistrate issued a decision denying appellant's motion to dismiss and ordering genetic paternity testing. Appellant thereupon filed an objection to the decision of the magistrate and a request for findings of fact and conclusions of law. On May 14, 2004, the trial court issued a judgment entry denying the objection and affirming the decision of the magistrate. On May 24, 2004, due to the passage of the original date scheduled for genetic testing, FCCSEA obtained an ex parte order for said testing.
 {¶ 4} On May 26, 2004, appellant filed a notice of appeal. This Court ultimately dismissed the appeal as not being based on a final appealable order. On May 12, 2005, following the performance of genetic testing, the trial court issued a judgment entry establishing appellee as the father of Peyton.
 {¶ 5} On May 18, 2005, appellant filed a notice of appeal. She herein raises the following sole Assignment of Error:
 {¶ 6} "I. THE TRIAL COURT ERRED IN ORDERING GENETIC TESTING UPON A COMPLAINT FILED BY THE CHILD SUPPORT ENFORCEMENT AGENCY WHERE THE AGENCY HAS NO STANDING TO FILE A PATERNITY COMPLAINT BECAUSE THE MOTHER IS NOT A RECIPIENT OF PUBLIC ASSISTANCE OR OF SERVICES UNDER TITLE IV-D OF THE SOCIAL SECURITY ACT."
 I. {¶ 7} In her sole Assignment of Error, appellant-mother contends the trial court erred in ordering genetic paternity testing upon FCCSEA's complaint where appellant is undisputedly not on public assistance or receiving Title IV-D services. We disagree.
 {¶ 8} Appellant essentially challenges FCCSEA's standing to file a paternity complaint, pursuant to R.C 3111.04(A), under the circumstances of this case.[1] The issue of standing is a threshold test that, once met, permits a court to determine the merits of the questions presented. Wiley Organics, Inc. v.Ankrom, Coshocton App. No. 03 CA 12, 2004-Ohio-6362, ¶ 15, citingTiemann v. Univ. of Cincinnati (1998), 127 Ohio App.3d 312,325, 712 N.E.2d 1258. Lack of standing challenges the capacity of a party to bring an action, not the subject matter jurisdiction of the court. State ex rel. Ralkers, Inc. v. Liquor ControlComm., Franklin App. No. 04AP-779, 2004-Ohio-6606, ¶ 35, citingState ex rel. Smith v. Smith (1996), 75 Ohio St.3d 418, 420,662 N.E.2d 366, 369; State ex rel. LTV Steel Co. v. Gwin
(1992), 64 Ohio St.3d 245, 251, 594 N.E.2d 616, 621. When an appellate court is presented with a standing issue, generally a question of law, it applies a de novo standard of review. SeeHicks v. Meadows, Summit App. No. 21245, 2003-Ohio-1473, citingCleveland Elec. Illum. Co. v. Pub. Util. Comm. (1996),76 Ohio St.3d 521, 523, 668 N.E.2d 889.
 {¶ 9} R.C. 3111.04(A) reads as follows: "An action to determine the existence or nonexistence of the father and child relationship may be brought by the child or the child's personal representative, the child's mother or her personal representative, a man alleged or alleging himself to be the child's father, the child support enforcement agency of thecounty in which the child resides if the child's mother is arecipient of public assistance or of services under Title IV-D ofthe `Social Security Act,' 88 Stat. 2351 (1975), 42 U.S.C.A. 651,as amended, or the alleged father's personal representative." (Emphasis added.)
 {¶ 10} In analyzing this issue, we commence by acknowledging the general rule that "we must presume the legislature means what it says; we cannot amend statutes to provide what we consider a more logical result." State v. Virasayachack (2000),138 Ohio App.3d 570, 574, 741 N.E.2d 943. However, we also recognize that the body of legislation, both state and federal, addressing the critical areas of paternity, child support, and public assistance has greatly evolved over the past several decades, and individual statutes must be considered as part of this larger panorama. For example, in order to qualify for federal funds, each of the fifty States must operate a child support program that comports with Title IV-D, including a "comprehensive system to establish paternity." Blessing v. Freestone (1997), 520 U.S. 329,117 S.Ct. 1353, 137 L.Ed.2d 569.
 {¶ 11} The Ohio Supreme Court has held that statutes which relate to the same general subject matter must be read in pari materia. Johnson's Markets, Inc., v. New Carlisle Department ofHealth (1991), 58 Ohio St.3d 28. "The business of writing statutes is often a complex and cumbersome affair. In determining the intent of the General Assembly, it is to be presumed that a code of statutes relating to one subject is governed by one spirit and policy and intended to be consistent and harmonious in its several parts." Cuyahoga Cty. Support Enforcement Agency v.Lozada (1995) 102 Ohio App.3d 442, 450, 657 N.E.2d 372, citingCincinnati v. Connor (1896), 55 Ohio St. 8; Cincinnati v.Guckenberger (1899), 60 Ohio St. 353, 370, 54 N.E. 376, 381. "The underlying spirit and policy" of R.C. Chapter 3111 is concern for the best interest of the child. Id., citing Markerv. Grimm (1992), 65 Ohio St.3d 139, 601 N.E.2d 496.
 {¶ 12} In this light, we contrast with R.C. 3111.04(A) the expansive language of R.C. 3125.36(C):
 {¶ 13} "A child support enforcement agency shall make available an application for Title IV-D services to all persons
requesting a child support enforcement agency's assistance in an action under sections 3111.01 to 3111.18 of the Revised Code or in an administrative proceeding brought to establish a parent and child relationship, to establish or modify an administrative support order, or to establish or modify an order to provide health insurance coverage for the children subject to a support order." (Emphasis added.)
 {¶ 14} Likewise, 42 USC Sec. 654(A) provides that "[a] State plan for child and spousal support must * * * provide services relating to the establishment of paternity or the establishment, modification, or enforcement of child support obligations, as appropriate, under the plan with respect to * * * any other child, if an individual applies for such services with respect to the child."
 {¶ 15} As FCCSEA suggests, in reading R.C. 3111.04(A) in context with these and other related statutory provisions, we cannot conclude that the Ohio Generally Assembly intended to create a statutory scheme to limit the services of county child support agencies in situations where fathers request services for a non-public-assistance paternity action in court.[2] Our reading instead suggests that the specific provision at issue was intended to clarify which county CSEA would handle a particular parentage action, and to provide a means for ensuring paternity in cases where neither mother nor alleged father would voluntarily take on the role of plaintiff.
 {¶ 16} Furthermore, under appellant's proposed statutory interpretation, a putative father, even if he were a public assistance recipient, could not avail himself of CSEA/Title IV-D assistance to bring a paternity action under R.C 3111.04, even though a similarly situated mother could do so. Such a result indeed raises significant constitutional concerns under the Equal Protection Clause. It is a well-established rule of construction that statutes are to be interpreted so as to avoid a finding of unconstitutionality. See, e.g., Hughes v. Registrar (1997),79 Ohio St.3d 305.
 {¶ 17} We therefore find no error in the trial court's ordering of genetic testing and final redress of the paternity complaint in the best interest of the minor child Peyton Shockley. Appellant's sole Assignment of Error is overruled.
 {¶ 18} For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, of Fairfield County, Ohio is affirmed.
Boggins, P.J., and Gwin, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Fairfield County, Ohio, is affirmed.
Costs to appellant.
[1] Appellant's argument is premised on FCCSEA being the party filing the complaint. We note the actual complaint lists both FCCSEA and appellee-father as plaintiffs. The complaint is, however, signed solely by an assistant prosecuting attorney for FCCSEA. We will assume for purposes of the within appeal that FCCSEA is the party who "brought" the paternity action per the statute.
[2] Interestingly, in the case sub judice, "[a]t the request of [appellant], the administrative determination [see R.C. 3111.38] was dismissed so that the Child Support Enforcement Agency could file a paternity complaint with the Fairfield County Common Pleas Court" (see Appellant's Statement of the Facts, paragraph 2). Yet appellant thereupon turned around and sought to have the court action dismissed for want of FCCSEA standing.