[Cite as *State v. Davis*, 2014-Ohio-1197.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J.<br>Hon. Sheila G. Farmer, J. |
|      Plaintiff-Appellee | Hon. John W. Wise, J. |
| -vs- | Case No. 13 CA 55 |
| SCOTT DAVIS | |
|      Defendant-Appellant | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Municipal Court, Case No. 13 CRB 518 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 14, 2014 |


APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| AMY S. WEEKS | CHRISTOPHER SHOOK |
| ASSISTANT LAW DIRECTOR | MORROW, GORDON & BYRD |
| 40 West Main Street | 33 West Main Street, P. O. Box 4190 |
| Newark, Ohio 43055 | Newark, Ohio 43058-4190 |

*Wise, J.*

{¶1}. Defendant-Appellant Scott Davis appeals from his conviction, following a jury trial in the Licking County Municipal Court, on one count of domestic violence. The relevant facts leading to this appeal are as follows.

{¶2}. On the morning of March 17, 2013, appellant's father, David Delawder, noticed appellant and two other persons removing items from a pole barn on Delawder's property on Pinewood Trail near Newark, Ohio. Appellant and Delawder previously had a disagreement concerning a washer and dryer and rent money that was to be paid to Delawder for storing the property. The situation became physical. According to Delawder's subsequent trial testimony, appellant assaulted him with his fists and his hands. Delawder also claimed that he was hit in the back of the head with a 2 x 4 piece of lumber.

{¶3}. Following the altercation, Delawder contacted 911. Licking County Sheriff's Deputy Christopher Van Balen later testified that he was dispatched on March 17, 2013 on a possible assault to a location in Perry Township, Licking County, Ohio. When he arrived at the scene, he made contact with Delawder. Deputy Van Balen discussed the situation with Delawder and took pictures of his claimed injuries. Deputy Van Balen testified that he thereafter attempted to contact appellant via cell phone, but he was unsuccessful.

{¶4}. On March 21, 2013, appellant was charged with one count of domestic violence, R.C. 2919.25, a misdemeanor of the first degree. A warrant was issued for appellant's arrest. However, on April 24, 2013, appellant voluntarily appeared for an arraignment hearing, at which time he entered a plea of not guilty. Appellant filed a

request for court-appointed counsel the same day, and counsel was appointed for him by the court.

{¶5}. The matter was thereupon scheduled for a pre-trial conference June 14, 2013 at 2:30 P.M. and a jury trial on June 17, 2013 at 8:30 A.M.

{¶6}. On the day of trial, appellant filed a motion to continue for the purpose of presenting an alibi defense. Appellant filed a notice of alibi at the same time. Counsel for appellant stated in the motion to continue that there had been no contact prior to the pre-trial conference on June 14, 2013. The court denied the motion to continue.

{¶7}. At the close of the State's case, the defense proffered a summary of the testimony that would have been presented for appellant's alibi. This statement was presented outside of the presence of the jury. Trial counsel indicated that three witnesses, had their presence been able to be secured, would have testified that appellant was at a house on Cedar Run Road with three individuals playing video games at the time of the incident at issue. *See* Tr. at 60-61.

{¶8}. Furthermore, at the close of the State's case, defense counsel moved for acquittal pursuant to Criminal Rule 29. The defense argument was essentially that the State had failed to present sufficient evidence to establish the date of the offense. *See* Tr. at 61. The motion for acquittal was denied.

{¶9}. The jury ultimately found appellant guilty of the offense of domestic violence.

{¶10}. The trial court sentenced appellant to ninety days in jail, with sixty days suspended, placed appellant on probation for a period of two years, and imposed a fine

of $175.00, plus court costs. The court also ordered that appellant have no contact with the victim.

{¶11}. Appellant filed a notice of appeal on June 17, 2013. He herein raises the following four Assignments of Error:

{¶12}. "I. THE STATE PRESENTED INSUFFICIENT EVIDENCE TO ESTABLISH APPELLANT AND VICTIM AS FAMILY OR HOUSEHOLD MEMBERS FOR PURPOSES OF A DOMESTIC VIOLENCE CONVICTION.

{¶13}. "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ADMITTING TESTIMONY OVER OBJECTION THAT THE ALLEGED VICTIM WAS THE FATHER OF APPELLANT.

{¶14}. III. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S REASONABLE REQUEST FOR A CONTINUANCE OF TRIAL TO SECURE WITNESSES FOR AN ALIBI DEFENSE.

{¶15}. "IV. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

I.

{¶16}. In his First Assignment of Error, appellant argues the State failed to present sufficient evidence at trial that the victim was a "family or household member" for purposes of Ohio's domestic violence statute. We disagree.

{¶17}. In reviewing a claim based on the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶18}. R.C. 2919.25(A) states as follows: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶19}. Pursuant to R.C. 2919.25(F)(1)(a)(ii), the definition of "family or household member" includes "[a]ny of the following who is residing or has resided with the offender: *** A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender."

{¶20}. The Ohio Supreme Court of Ohio has held: "[C]learly, the General Assembly believed that an assault involving a family or household member deserves further protection than an assault on a stranger. * * * [T]he offense of domestic violence, as expressed in R.C. 2919.25(E)(1)(a) and related statutes, arises out of the relationship of the parties rather than their exact living circumstances." *State v. Williams* (1997), 79 Ohio St.3d 459, 463-464, 683 N.E.2d 1126.

{¶21}. We herein first address appellant's argument that he was not sufficiently shown to have been a "family or household member" based on the testimony of the victim, Delawder, that appellant is his son. At trial, the following exchange took place between the prosecutor and Delawder:

{¶22}. "Q: Okay and how do you know [Appellant] Scott Davis?

{¶23}. "A: He is my son.

{¶24}. "[DEFENSE COUNSEL] MS. SCHOECK: Objection, move to strike hearsay foundation.

{¶25}. "THE COURT: Overruled.

{¶26}. "* * *

{¶27}. "Q: Okay and um ... obviously given your testimony about your last name you have different last names?

{¶28}. "A: Yes.

{¶29}. "Q: Is he your biological son?

{¶30}. "A: Yes ma'am he is.

{¶31}. "Q: And why do you have different last names?

{¶32}. "A: That was according to his mother that was her ordeal.

{¶33}. "Q: Okay were you married at that time?

{¶34}. "A: No we were not."

{¶35}. Tr. at 33-34.

{¶36}. Appellant emphasizes that the State did not present evidence that a father-son relationship between victim and himself had been formally established via Ohio's paternity establishment statutes (see R.C. 3111.01 et seq.) or via a birth certificate. Certainly, as this Court has previously recognized, "the body of legislation, both state and federal, addressing the critical areas of paternity, child support, and public assistance has greatly evolved over the past several decades, and individual statutes must be considered as part of this larger panorama." *Shockley v. Hedges*, Fairfield App.No. 05 CA 49, 2005-Ohio-6948, ¶ 10. However, we are unpersuaded that the State must produce formal documentation of civil paternity establishment in order to meet the "family member" element in father/child criminal domestic violence prosecutions. Instead, the State can utilize testimonial evidence going to the issue of paternity, subject to a credibility determination by the jurors or the finder of fact.

Furthermore, as the Ohio Supreme Court recognized in *Walden v. State* (1989), 47 Ohio St.3d 47, there are qualitative differences between criminal and civil actions which "militate against giving criminal judgments preclusive effect in civil or quasi-civil litigation." *Id.* at 52. Thus, establishing the element of paternity for purposes of a criminal domestic violence prosecution would not impair the future consideration of paternity in a R.C. 3111 case should the issue duly arise.

{¶37}. Accordingly, we find sufficient evidence was presented to support the initial "family member" element under R.C. 2919.25, as pertinent to this case.

{¶38}. We next address appellant's argument that he was not sufficiently shown to have resided with Delawder, based on the trial testimony. The pertinent exchange between the prosecutor and Delawder at trial is as follows:

{¶39}. "Q: Okay now did [Appellant] Mr. Davis at that time live with you?

{¶40}. "A: At that yes ... well he pretty much ... what happened was that everybody knowing in this courtroom I gave him a place to live because he was homeless and his girlfriend all they did was fight and argue, fight and argue and I got tired of it. I just lost five people in my life, my mom, my brother and everything he knew what was going on in my head it was all mixed up in my head. I go outside and they beat the living hell out of me.

{¶41}. "Q: Now, but at that time Mr. Delawder was Scott Davis living with you in your house?

{¶42}. "A: No he left my premises.

{¶43}. "Q: And about when before that did he leave?

{¶44}. "A: After he beat me up.

**{¶45}.** "Q: So if he beat you up then he was living at your house then?

**{¶46}.** "A: Well more or less he was coming and going but he was not living in my home. Yes.

**{¶47}.** "Q: Okay he was coming and going so he was in and out of your house?

**{¶48}.** "A: Correct."

**{¶49}.** Tr. at 38.

**{¶50}.** Upon review, we find sufficient evidence was presented to support the "residing or has resided with" element under R.C. 2919.25.

**{¶51}.** Accordingly, appellant's First Assignment of Error is overruled.

II.

**{¶52}.** In his Second Assignment of Error, appellant argues the trial court erred in admitting into evidence certain testimony going to the victim's paternal relationship to appellant. We disagree.

**{¶53}.** The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. *State v. Oman* (Feb. 14, 2000), Stark App.No. 1999CA00027. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible, subject to certain exceptions. *See* Evid.R. 802.

{¶54}. As we noted previously, the pertinent testimony by Delawder on this issue was simply as follows:

{¶55}. "Q: Okay and how do you know [Appellant] Scott Davis?

{¶56}. "A: He is my son.

{¶57}. "[DEFENSE COUNSEL] MS. SCHOECK: Objection, move to strike hearsay foundation.

{¶58}. "THE COURT: Overruled.

{¶59}. Tr. at 33.

{¶60}. Appellant presently appears to argue that Delawder's knowledge of his paternity of appellant could only have come from appellant's mother and thus his testimony in that regard was improper hearsay. However, our reading of the record in this instance does not disclose the precise source of Delawder's knowledge of paternity; the only subsequent reference to appellant's mother by Delawder concerns the choice of appellant's last name. We therefore find appellant's hearsay argument in this regard to be speculative and without merit.

{¶61}. Appellant's Second Assignment of Error is overruled.

III.

{¶62}. In his Third Assignment of Error, appellant contends the trial court committed reversible error in denying his motion to continue the trial for purposes of securing alibi witnesses. We disagree.

{¶63}. A trial court has the inherent authority to manage its own proceedings and control its own docket. *Love Properties, Inc. v. Kyles,* Stark App.No. 2006CA00101, 2007-Ohio-1966, ¶ 37, citing *State ex rel. Nat. City Bank v. Maloney,* Mahoning App.No.

03 MA 139, 2003-Ohio-7010, ¶ 5. A litigant does not have a right to unreasonably delay a trial. *See Hartt v. Munobe* (1993), 67 Ohio St.3d 3, 9, 1993–Ohio–177. The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial court. *Polaris Ventures IV, Ltd. v. Silverman,* Delaware App.No. 2005 CAE 11 0080, 2006-Ohio-4138, ¶ 14, citing *State v. Unger* (1981), 67 Ohio St.2d 65, 423 N.E.2d 1078. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

{¶64}. In determining whether a trial court abused its discretion in denying a motion for a continuance, an appellate court should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconveniences to witnesses, opposing counsel and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise to the need for the continuance; and other relevant factors, depending on the unique facts of each case. *In re P.T.,* Stark App.No.2011 CA00200, 2012–Ohio–1287, ¶ 17, citing *Unger* at 67–68, 423 N.E.2d 1078. *See, also, State v. Holmes* (1987), 36 Ohio App.3d 44, 47–48, 521 N.E.2d 479.

{¶65}. In support of his claim, appellant somewhat vaguely maintains that his appointed trial counsel encountered "some apparent difficulty" making contact with appellant prior to the pre-trial, which occurred three days before trial. *See* Appellant's Brief at 15. Appellant urges that there had been no prior continuance requests, and that the only inconveniences would have been to the two State's witnesses, one who lives in

Licking County (Delawder) and one who works as an officer with the Licking County Sheriff's Office (Deputy Van Balen).

**{¶66}.** We note appellant filed his alibi notice a few minutes before trial, despite the deadline of seven days before trial set forth under Crim.R. 12.1. Furthermore, the proposed alibi witnesses were not identified by complete names and addresses. Upon review of the record in light of the guidelines set forth in *Unger, supra,* we find no abuse of discretion in the trial court's denial of appellant's request to continue the trial.

**{¶67}.** Accordingly, appellant's Third Assignment of Error is overruled.

IV.

**{¶68}.** In his Fourth Assignment of Error, appellant maintains he did not receive the effective assistance of counsel during the trial. We disagree.

**{¶69}.** The two-part test for ineffective assistance of counsel in criminal cases is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland, supra*; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶70}.** In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley* at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption

exists counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

{¶71}. However, it is well-established that a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the appellant as a result of the alleged deficiencies. *See Bradley* at 143, quoting *Strickland* at 697. Furthermore, "[a] defendant must demonstrate actual prejudice, and speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel." *State v. Halsell*, 9th Dist. Summit No. 24464, 2009-Ohio-4166, ¶ 30, citing *State v. Downing,* 9th Dist. Summit No. 22012, 2004–Ohio–5952, ¶ 27. Actual prejudice means there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the case would have been different. *See State v. Adams*, Licking App.No. 2005-CA-0024, 2005-Ohio-5211, ¶ 18.

{¶72}. The crux of appellant's claim of ineffective assistance goes to his trial counsel's handling of a motion to acquit at the close of the State's case. The record reveals appellant's trial counsel did move at the close of the State's case for an acquittal pursuant to Criminal Rule 29. In the oral motion, trial counsel argued that the State had "failed to establish all the elements of their offense," while counsel specifically argued that the prosecution had failed to establish the date of the offense. *See* Tr. at 61.

{¶73}. Appellant herein was convicted of one count of domestic violence under R.C. 2919.25(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Based on our review of the record on appeal, as set forth previously in pertinent part in our recitation of facts, we find the State presented sufficient evidence to support the conviction, and we are

unpersuaded that a more extensive motion for acquittal would have altered the outcome of the case sub judice.

{¶74}. Accordingly, appellant's Fourth Assignment of Error is overruled.

{¶75}. For the reasons stated in the foregoing opinion, the judgment of the Municipal Court of Licking County, Ohio, is hereby affirmed.


By: Wise, J.

Farmer, J., concurs.

Hoffman, P. J., concurs separately.


JWW/d 0219

*Hoffman, P.J., concurring*

{¶76} I concur in the majority's analysis and disposition of Appellant's first, third and fourth assignments of error.

{¶77} I further concur in the majority's disposition of Appellant's second assignment of error.  However, I do so based upon the hearsay exception found in Evid.R. 804 (B)(4)(b).