[Cite as *Sobin v. Lim*, 2012-Ohio-5544.]

[Please see vacated opinion at 2012-Ohio-4060.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 97952

---

## ROBERT SOBIN

PLAINTIFF-APPELLEE

vs.

## CHUN BIN LIM, ET AL.

DEFENDANTS-APPELLANTS

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-727635

**BEFORE:** Stewart, P.J., Boyle, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** November 29, 2012

**ATTORNEYS FOR APPELLANTS**

H. Alan Rothenbuecher
Jay E. Krasovec
Ice Miller, LLP
Fifth Third Center
600 Superior Avenue, East
Suite 1701
Cleveland, OH    44115


**ATTORNEY FOR APPELLEE**

Alan J. Rapoport
55 Public Square
Suite 1717
Cleveland, OH    44113


ON RECONSIDERATION[1]

---

[1]The original announcement of decision, *Sobin v. Lim*, 8th Dist. No. 97952, 2012-Ohio-4060, released September 6, 2012, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 2.2(A)(1).

MELODY J. STEWART, P.J.:

{¶1} Plaintiff-appellee Robert Sobin, a former employee of defendant-appellant Trionix Research Laboratory and its majority shareholder, defendant-appellant Chun Bin Lim, filed this declaratory judgment seeking a declaration that he was a shareholder of Trionix. Sobin alleged that he purchased 655 shares of Trionix stock in 1987 and 1988, but Trionix and Lim argued that Sobin sold his shares back to the corporation in 1991 and 1992 and that Sobin should in any event be estopped from making claims based on his ownership rights because he had ceased exercising any rights as a shareholder after 1992. The court denied cross-motions for summary judgment and conducted a trial. It held that Sobin is a Trionix shareholder and payments Trionix made to Sobin were not to buy back the stock, but were instead treated by both parties as "back-pay" and a "loan reimbursement."

I

{¶2} We originally dismissed this appeal as non-final because the court's declaration that Sobin owned 655 shares contained a further order setting a date for a hearing "to address the value of Plaintiff's 655 shares of Trionix." We found the court's decision to hold a hearing to value Sobin's shares invoked well-established precedent that the resolution of a party's liability without a determination of damages is non-final because it does not affect a substantial right as required by R.C. 2505.02. *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 546, 684 N.E.2d 72 (1997),

citing *State ex rel. A & D Ltd. Partnership v. Keefe*, 77 Ohio St.3d 50, 53, 671 N.E.2d 13 (1996).

{¶3} On reconsideration, we now conclude that the court's order is final despite the court setting the matter of valuation for a later hearing. There is no question that the court's declaration of ownership affected a substantial right under R.C. 2505.02(A)(1). Indeed, absent any language on valuation, the court's order would have clearly been final. Sobin's complaint did not seek a valuation of the shares nor was there any argument at trial concerning the valuation of the shares. The parties both agree that the trial court acted on its own in deciding to value the shares, an action that was extraneous and wholly unnecessary to the question of whether Sobin was a shareholder in Trionix. For purposes of the declaratory judgment part of the litigation, the case terminated with the finding that Sobin owned the shares, coupled with the court's later Civ.R. 54(B) certification of no just reason for delay separating the declaratory action from the remaining counts. We thus have a final, appealable order.

II

{¶4} We begin with Lim's second assignment of error — a number of complaints that essentially raise the issue of whether the court's judgment that Sobin was a shareholder of Trionix was against the manifest weight of the evidence.

{¶5} The weight of the evidence concerns "'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972

N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. When reviewing an argument that a judgment is against the manifest weight of the evidence, the reviewing court must engage in every reasonable presumption in favor of the judgment and the finding of facts. *Id*. at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment * * *." *Id.*

{¶6} The parties agree that Sobin, a former Trionix employee, was a founding shareholder in the corporation and was named a director. At the time of incorporation in 1987, Sobin received 277 shares of "founders stock." Later that same year, Sobin acquired 80 shares of stock. In 1988, Sobin acquired another 298 shares of stock, for a total holding of 655 shares. The parties also agree that in 1991 and 1992, Sobin received two payments from Trionix in the amount of $71,875 and $16,000. As noted by the court, the dispute is whether these payments to Sobin were to buy back his shares or were for some other purpose.

{¶7} To prove his contention that Trionix repurchased Sobin's shares, Lim claimed that Trionix's by-laws precluded anyone but current employees of the corporation from holding Trionix shares. Although the corporate by-laws did not actually contain any such restriction, Lim claimed that the board adopted the restriction on stock ownership and cited a financial statement prepared in 1988 that memorialized this policy. What is more, Lim offered evidence showing that Sobin knew that Trionix demanded and received the shares held by four employees who left the corporation.

{¶8} Sobin offered evidence showing that not only did Trionix never adopt a formal policy requiring a departing employee/shareholder to sell back shares, minutes from a March 1988 Trionix shareholder meeting showed that Lim (as chairman of the board) "[r]eaffirmed that 20% of the corporate stock is available to outside investors."

{¶9} Sobin also offered evidence showing that Trionix continued to consider Sobin a shareholder long after he terminated his employment. For example, in January 1997, Trionix sent Sobin a letter giving him notice of a special meeting of shareholders. While it is true that Sobin's presence at the meeting might have been required because he was still a member of the board of directors, other evidence confirmed his status as a shareholder. A mortgage deed recorded just days after the January 1997 shareholder meeting listed Sobin as a "current shareholder" in the corporation. Other evidence showed that the four former shareholders who sold their shares back to Trionix were removed from the corporate shareholder's roll, but that Sobin's name remained on the shareholder's roll years past the point when Lim claimed that Sobin sold back his shares.

{¶10} Lim's primary evidence that Sobin sold his shares back to the corporation consisted mainly of the $71,875 payments made in 1991 and 1992, which he maintained were for 575 shares of Sobin's stock that were given to him through the Trionix employee investment plan. Under that plan, Sobin agreed to work for a lower salary in exchange for shares in the corporation. Lim argued that these were in essence cash loans to the corporation and the shares of stock issued in return were the equivalent of promissory

notes valued at $125 per share. He pointed out that the $71,875 in payments made to Sobin in 1991 and 1992 represented the exact value of the 575 shares that Sobin received at $125 per share.

{¶11} Sobin characterized this receipt of shares under the employee investment plan as compensation for agreeing to work for a lower salary at a point when Trionix was having cash flow problems. Indeed, Trionix's check register called its payments to Sobin "back-pay" and "loan reimbursement." Additionally, both Sobin and Lim, who received similar payments, treated those payments as income for tax purposes rather than proceeds from the sale of stock. And at no point did Sobin surrender his stock certificates nor did Trionix demand their return in a manner consistent with the claim that the payments were intended to repurchase the shares. The court held as much when deciding the action in Sobin's favor.

{¶12} Competent, credible evidence supports the court's verdict and, in fact, contradicted even the most basic assertions made by Trionix. For example, Trionix offered no documentation to show that stock ownership was restricted to current employees, relying instead on the testimony of Lim. His recollections were flatly contradicted by evidence showing that Trionix actually contemplated that 20 percent of shares could be held by persons outside the corporation.

{¶13} While it is true that Trionix could document that some former Trionix employees were told they had to sell their shares back to Trionix when they left, no such documentation existed to show that Trionix made the same demand on Sobin. In fact,

Trionix not only failed to make any written demand that Sobin return his shares, its claim that Sobin took payment in exchange for returning his shares was contradicted by corporate documents that continued to list Sobin as a shareholder long after he left employment with the corporation.

{¶14} Finally, Trionix's claim that payments to Sobin were reimbursements for loans were contradicted by its own treatment of those payments, characterizing them as "back pay." Tellingly, even Lim failed to treat similar payments as the sale of stock on his federal income tax return.

{¶15} Trionix did offer evidence showing that Sobin was aware that other departing employees were required to sell their stock back to the corporation. And the total amount it paid Sobin — consistent with the stock being valued at $125 per share — made Trionix's theory of the case plausible. Certainly, many years passed from the time Sobin left the corporation until the time he asserted his ownership rights. Better documentation may well have turned the case in Trionix's favor. But the court found the inconsistencies in Trionix's case that we have detailed did not tip the balance of evidence. As a reviewing court, we are obligated to give the evidence the construction most consistent with upholding the verdict. We conclude that the court's verdict was not against the manifest weight of the evidence.

### III

{¶16} Trionix next argues that the court erred as a matter of law by failing to grant summary judgment on its affirmative defense of laches. It argues that Sobin is equitably

barred from asserting his ownership of the Trionix shares when he waited 18 years from receiving payment from Trionix to demanding redress for violations of his shareholder rights. It also argues that the court erred by refusing to grant judgment because the statute of limitations for Sobin's claims had expired.

A

{¶17} Laches is an equitable doctrine that bars the delayed assertion of claims when the delay has caused circumstances to change so much that it is no longer just to grant the plaintiff's claim. "The elements of a laches defense are '(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party.'" *Portage Cty. Bd. of Comm. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 81, quoting *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 1995-Ohio-269, 656 N.E.2d 1277. Because laches is a component of equity, we review claimed error in the application of the doctrine for an abuse of discretion. *Payne v. Cartee*, 111 Ohio App.3d 580, 590, 676 N.E.2d 946 (4th Dist.1996).

{¶18} When denying Trionix's partial motion for summary judgment on the defense of laches, the court found there were questions of fact because Sobin maintained he was the owner of the 655 shares and had no reason to know that there was a question regarding his ownership status until 2009, when he requested that Trionix supply him with documentation that would enable him to value his shares.

{¶19} We find no error in the court's refusal to grant summary judgment on the affirmative defense of laches. As the court noted, Sobin had no reason to question his status as a shareholder until 2009 — when Trionix refused to grant him access to corporate records. While Sobin had not made any demands on the corporation for many years, that fact says nothing about his ownership of the stock. Many shareholders like Sobin quietly retain their stock for investment purposes, content to let their investment mature. That investors of this type do not assert claims on corporate directors is therefore unremarkable.

{¶20} Trionix also argues that Sobin failed to assert ownership "rights" like calling meetings of the board of directors or attending shareholder meetings. We are aware of no general rule that stock ownership can grow stale, much less a rule that requires shareholders to actively participate in the running of a corporation as a means of preventing their stock ownership from going stale. Sobin was a member of the Trionix board of directors until he was removed from the board in a 1997 shareholder meeting where Lim, acting as majority shareholder, named a new board of directors of his own choosing. Trionix offered no evidence to show that any other shareholder meetings were called after 1997. It is disingenuous for it to argue that Sobin had the responsibility to call for a shareholder meeting post-1997 when no other shareholder of the corporation, including Lim, was so required.

B

**{¶21}** We need not dwell on Trionix's claim that the 15-year statute of limitations for written contracts expired, arguing that Sobin's claims accrued in 1992 when Trionix failed to hold the annual shareholder meeting but that he did not file suit until 2010. We agree with the court that Sobin had no reason to doubt his ownership of the shares until December 2009, when Trionix refused to provide the information he requested. Indeed, it was not until December 2009 that Trionix, inconsistent with its own records, manifested any indication that Sobin did not own the shares. On this basis, the court did not err by refusing to grant judgment on the statute of limitations.

**{¶22}** Judgment affirmed.

It is ordered that appellee recover of appellants his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MELODY J. STEWART, PRESIDING JUDGE

MARY J. BOYLE, J., and
MARY EILEEN KILBANE, J., CONCUR