[Cite as *In re S.K.L.*, 2016-Ohio-2826.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 102136**

---

# IN RE: S.K.L.

# A Minor Child

[Appeal By D.F.]

---

## DECISION EN BANC:
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. PR 13706774

**BEFORE:** The En Banc Court

**RELEASED AND JOURNALIZED:** May 5, 2016

**ATTORNEYS FOR APPELLANT D.F.**

Jay F. Crook
John W. Shryock
Shryock, Crook & Associates, L.L.P.
30601 Euclid Avenue
Wickliffe, Ohio   44092


**ATTORNEY FOR APPELLEE T.F.**

Pamela D. Kurt
Kurt Law Office L.L.C.
3503 Carpenter Road
Ashtabula, Ohio   44004


**ATTORNEY FOR APPELLEE S.W.L.**

Steven E. Wolkin
820 W. Superior Avenue, Suite 510
Cleveland, Ohio   44113

SEAN C. GALLAGHER, J.:

{¶1} Pursuant to App.R. 26, Loc.App.R. 26, and *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008-Ohio-4914, 896 N.E.2d 672, this court determined that a conflict existed between the original panel's decision in *In re S.K.L.*, 2015-Ohio-2860, 39 N.E.3d 825 (8th Dist.), and the decisions in *Gatt v. Gedeon*, 20 Ohio App.3d 285, 485 N.E.2d 1059 (8th Dist.1984), and *State ex rel. Smith v. Smith,* 110 Ohio App.3d 336, 674 N.E.2d 398 (8th Dist.1996), on the question whether the legislature's grant of original jurisdiction to the domestic relations courts to determine parentage divests the juvenile court of its jurisdiction to determine the same. To secure and maintain uniformity of decisions within the district, we vacate the original panel's decision, reverse the decision of the trial court, and remand for further proceedings.

{¶2} Neither party has cited any need to revisit the facts as set forth in the original panel decision. T.F. and S.W.L. were married on December 30, 1995. Two children, K.M.L. and S.K.L., were born during their marriage. K.M.L. was born on May 6, 2001, and S.K.L. was born on June 17, 2005. S.W.L. was identified as the father of both children on their birth certificates.

{¶3} In July 2007, T.F. filed for divorce in the Cuyahoga County Common Pleas Court Domestic Relations Division. A judgment of divorce was entered on September 27, 2007. The judgment entry of divorce included a finding that K.M.L. and S.K.L. were born as issue of the marriage, identified S.W.L. as the father of the two children, and

incorporated the separation agreement that had been agreed to by the parties. Since the children were born, T.F. and S.W.L._raised the two children as their own both during the marriage and pursuant to the terms of the shared parenting plan following their divorce.

{¶4} After her divorce from S.W.L., T.F. married D.F. Although D.F. arguably knew or should have known since 2004 or 2005 that S.K.L. could have been his biological child (because of his extramarital sexual relationship with T.F. at or around the time S.K.L. was conceived), he took no action to determine whether he was, in fact, S.K.L.'s biological father or to assert any parental claim with respect to S.K.L. until she was more than six years old._

{¶5} It was T.F. who first raised the issue of S.K.L.'s_paternity with the domestic relations court in December 2011, four years after her divorce from S.W.L. T.F. filed a series of motions in the domestic relations court seeking to modify the allocation of parental rights and responsibilities, parenting time, and the shared parenting plan set forth in the divorce decree based on the allegation that S.W.L. was not S.K.L.'s biological father. T.F. argued that genetic testing performed in September 2011 indicated that D.F. was S.K.L.'s probable biological father and that this "change in circumstances" warranted modification of the parties' rights as set forth in the divorce decree. T.F. also sought to modify the child support order, seeking an increase in support from S.W.L. for the care of the children. S.W.L. moved to dismiss these motions, arguing that there had been no change in circumstances and that the issue of the children's paternity had been established in the divorce decree and could not be relitigated. The domestic relations court ordered

that the genetic test results be sealed until further order of the court. On October 1, 2012, T.F. filed a motion to add D.F. as a third-party defendant.

{¶6} On April 24, 2013, the magistrate dismissed T.F.'s motions to modify allocation of parental rights and responsibilities, parenting time, and the shared parenting plan — the motions that had been predicated on the claim that D.F. was S.K.L.'s biological father — and ordered that the motion to modify child support be referred to a support magistrate. The magistrate concluded that "the paternity of the parties' minor children ha[d] been established in their divorce decree and is res judicata" and that T.F., therefore, "cannot raise the issue of paternity as a change of circumstances." The magistrate also denied T.F.'s motion to add D.F. as a new party defendant. T.F. filed objections to the magistrate's decision. On June 27, 2013, the trial court overruled her objections and adopted the magistrate's decision without modification. T.F. did not appeal the trial court's decision.

{¶7} While these motions were pending in the domestic relations court, D.F. commenced proceedings in the juvenile court. In August 2012, D.F. filed a verified application to determine custody (Cuyahoga C.P. Juv.No. CU 12113563), identifying himself as the "father" and one of the "parents" of S.K.L. (making no reference to S.K.L.'s legal father, S.W.L.) and inaccurately attesting that S.K.L. had lived only with T.F. or with himself and T.F. from 2006 to present. That same day, D.F. also filed a complaint to establish paternity and for allocation of parental rights and responsibilities in the juvenile court (Cuyahoga C.P. Juv.No. PR 12713562), alleging that he was the

biological father of S.K.L. based on the results of the genetic testing performed in September 2011 and requesting (1) that "any presumption of parentage subscribed [sic] to [S.W.L.] be rebutted," (2) that he "be recognized as Father to [S.K.L.]" and (3) that he be granted custody of S.K.L. S.W.L. filed an answer to the complaint denying the allegations related to D.F.'s claims of paternity and asserting various affirmative defenses. Concluding that "not all proper parties to this action were joined and served" in accordance with R.C. 3111.07, the magistrate ordered D.F. to file an amended complaint that complied with R.C. 3111.07 and to serve all proper parties within 30 days or the case would be dismissed for want of prosecution. On January 25, 2013, D.F.'s complaint in Case No. PR 12713562 was dismissed without prejudice pursuant to Civ.R. 41(A). Shortly thereafter, D.F.'s application for custody in Case No. CU 12113563 was likewise dismissed.

{¶8} Having been stymied by any attempt to intercede in the domestic relations action and upon the dismissal (without prejudice) of his action in the juvenile court on technical grounds, D.F. filed the current action to establish paternity in the juvenile court. D.F. averred that he and T.F. had an extramarital relationship during T.F.'s marriage to S.W.L., that S.K.L. was conceived as a result of that relationship, and that he is the biological father of S.K.L. Also attached to the complaint was a "brief in support" along with copies of S.K.L.'s birth certificate, the divorce decree, the results of the genetic testing, the April 23, 2013 magistrate's decision, and a Uniform Child Custody Jurisdiction Enforcement Act affidavit. S.W.L., "ex-husband/father," and T.F.,

"ex-wife/mother," were named as defendants in the action. S.W.L. filed an answer denying the allegations related to D.F.'s claims of paternity and asserting various affirmative defenses, including lack of subject matter jurisdiction, laches, the failure to join indispensable parties, and that the prior determination of S.K.L.'s paternity in the divorce decree was final as to both T.F. and D.F. S.W.L. also filed a counterclaim for declaratory judgment, seeking a dismissal of the complaint to establish paternity and a declaration that (1) R.C. 3111.04(A) was unconstitutional as applied to S.W.L.; (2) the court lacked jurisdiction to hear the action; and (3) D.F. could not bring an action to establish the paternity of S.K.L. because she had been previously found to be issue of a valid marriage. S.W.L. also filed motions to realign the parties (i.e., to have T.F. identified as a plaintiff rather than a defendant), to allow K.M.L. to intervene in the action, for the appointment of counsel and a guardian ad litem for K.M.L., for the appointment of a guardian ad litem for S.K.L., and to seal the results of the genetic testing. D.F. filed briefs opposing these motions, as well as a brief opposing S.W.L.'s "motions for declaratory judgment."_

{¶9} At a pretrial conference held on March 13, 2014, the juvenile court ordered the parties to submit briefs on various legal issues relating to the court's jurisdiction, T.F.'s and D.F.'s standing to challenge the paternity of S.K.L., the constitutionality of R.C. Chapters 2151 and 3111 as applied to the case, the applicability of the estoppel affirmative defense, and the admissibility of the genetic testing results. The parties timely submitted briefs (D.F. and T.F. submitted a joint brief) on these issues as ordered

by the court. S.W.L. thereafter filed a motion to dismiss the complaint to establish paternity, or in the alternative, requesting that the court not consider T.F. and D.F.'s brief on the legal issues on the grounds that (1) D.F. and T.F. had failed to serve the Ohio Attorney General with a copy of their brief, and (2) T.F. had failed to file an answer, which S.W.L. argued precluded her from filing any briefs in the case._

{¶10} On September 25, 2014, following its consideration of the pleadings, motions, and briefs submitted by the parties, the juvenile court entered a judgment entry in which it granted S.W.L.'s motions to realign the parties and to dismiss the complaint, concluding (1) that the juvenile court lacked subject matter jurisdiction over the parentage issue, and (2) that D.F. and T.F. were barred from bringing a parentage action based on the doctrine of laches. The juvenile_court held that pursuant to R.C. 3111.16 and 3111.381(E), the domestic relations court "has jurisdiction and continues to hold jurisdiction over the subject matter herein." The court further held that pursuant to R.C. 3111.02(B), it was required to give full faith and credit to the determination made by the domestic relations court in the judgment entry of divorce that S.K.L. was the child of T.F. and S.W.L., that the determination of the parent-child relationship between S.K.L. and S.W.L. was determinative for all purposes under R.C. 3111.13(A), and that T.F. was "judicially estopped" from asserting that S.W.L. was not S.K.L.'s legal father._

{¶11} With respect to the laches issue, the juvenile court concluded that although T.F. and D.F. knew, or had reason to know, as early as 2004 that S.K.L. might not be the biological child of S.W.L., they did nothing to assert any such claim until seven or eight

years later, after "[t]he parent-child relationship between [S.W.L.] and [S.K.L.] has not only been legally created, but has also been emotionally, socially and financially established." As such, the juvenile court concluded, "[a]ny determination that [S.W.L.] is not [S.K.L.'s] father would not only be an affront to their legal and emotional parent-child relationship, but would also result in devastating consequences to [S.W.L.] and [S.K.L.]." The juvenile court, therefore, dismissed D.F.'s complaint to establish paternity. It then dismissed S.W.L.'s counterclaim and all other pending motions as moot.

{¶12} D.F. appealed, raising five assignments of error. In his merit brief, D.F. tangentially assigned error challenging the trial court's conclusion that it lacked jurisdiction, primarily relying on this district's decision in *Gatt*, 20 Ohio App.3d 285, 485 N.E.2d 1059, in which a panel of this court concluded that the juvenile court has jurisdiction to determine parentage actions filed by nonparents. In response, S.W.L. filed his appellee brief arguing that the juvenile court correctly concluded that it lacked jurisdiction because the domestic relations court possessed continuing jurisdiction over the parentage issue. The issue, therefore, was fully briefed for our review with all parties having notice of the jurisdictional dispute. *See State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 21 (appellate courts should not decide cases on the basis of a new, unbriefed issue without providing the parties notice and an opportunity to brief the issue).

**{¶13}** Subject matter jurisdiction refers to "a court's power to hear and decide cases." *Davis v. Heisler*, 4th Dist. Hocking No. 09CA12, 2010-Ohio-98, ¶ 15, and *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75, 701 N.E.2d 1002 (1998). Appellate courts review a trial court's decision to dismiss a complaint for lack of subject matter jurisdiction under a de novo standard of review. *Bank of Am. v. Macho*, 8th Dist. Cuyahoga No. 96124, 2011-Ohio-5495, ¶ 7, and *Crestmont Cleveland Partnership v. Ohio Dept. of Health*, 139 Ohio App.3d 928, 936, 746 N.E.2d 222 (10th Dist.2000).

**{¶14}** The legislature granted both the domestic relations and juvenile courts jurisdiction to determine the parent and child relationship. The juvenile court is vested with original jurisdiction to determine the paternity of any child alleged to have been born out of wedlock. R.C. 2151.23(B)(2). The phrase "born out of wedlock" includes a child conceived by a married mother through an extramarital relationship. *State ex rel. Willacy v. Smith*, 78 Ohio St.3d 47, 52, 676 N.E.2d 109 (1997). In turn, R.C. 3111.06(A) provides the domestic relations court with "original jurisdiction" over paternity actions if "an action for divorce, dissolution, or legal separation has been filed in a court of common pleas." R.C. 3111.06(A).

**{¶15}** "Original jurisdiction" should not be confused with "exclusive original jurisdiction." *See, e.g.,* R.C. 2151.23(A) and 2151.23(B) (division (A) sets forth the issues within the exclusive original jurisdiction of the juvenile court while division (B) presents the issues within the original jurisdiction of the juvenile court). The legislature is cognizant of the difference between exclusive and concurrent jurisdiction and has

determined that the juvenile and the domestic relations courts shall share jurisdiction over parentage determinations if a proceeding was initiated with the domestic relations court.[1]

{¶16} The domestic relations court, in particular, also has continuing jurisdiction to modify or revoke: (1) a judgment or order "to provide for future education and support" as issued under R.C. 3111.01 through 3111.18; (2) a judgment or order issued with respect to divisions (C) and (D) of R.C. 3111.13 (support and parenting time) and division (B) of R.C. 3111.15 (annuity for support); and (3) a judgment or order for the purchase of an annuity under division (D) of R.C. 3111.13. R.C. 3111.16. Thus, and as relevant to the current appeal, although the legislature provided the domestic relations court with continuing jurisdiction, the scope of that grant was limited only to orders issued under R.C. 3111.01 through 3111.18 that provide for the future education and support of the child. If R.C. 3111.16 were considered at face value, our inquiry would end. The juvenile court was the only court with jurisdiction to determine the parent and child relationship for a child born out of wedlock because the domestic relations court lacked continuing jurisdiction over that determination.

{¶17} In *In re Poling*, 64 Ohio St.3d 211, 594 N.E.2d 589 (1992), paragraph two of the syllabus, for example, the Ohio Supreme Court affirmed that rationale and held that the juvenile court maintains jurisdiction to make custody determinations pursuant to R.C.

---

[1]We acknowledge that the domestic relations courts in other counties within Ohio may have an additional basis of jurisdiction through R.C. 2301.03, which grants those courts jurisdiction over parentage actions irrespective of a divorce, legal separation, dissolution of marriage, or annulment action. *See, e.g.,* R.C. 2301.03(U). The legislature has not granted the Cuyahoga County Common Pleas Court Domestic Relations Division that level of jurisdiction. R.C. 2301.03(L).

2151.23(A)(2), even though there has been a divorce decree granting custody of the children to a parent and the domestic relations court maintained continuing jurisdiction to modify that decision. *Id.* at 215; *In re Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241, ¶ 45 (distinguishing *Poling,* holding that the juvenile court has jurisdiction to determine custody claims pursuant to R.C. 2151.23(A)(2) without reference to R.C. 3109.04).

{¶18} The grant of continuing jurisdiction to the domestic relations court in R.C. 3111.16, however, has been judicially extended. In *Cuyahoga Support Enforcement Agency v. Guthrie*, 84 Ohio St.3d 437, 443, 705 N.E.2d 318 (1999), the Ohio Supreme Court interpreted that first prong of R.C. 3111.16 as providing continuing jurisdiction over all judgments or orders issued under R.C. 3111.01 through 3111.18. *Id.* at 445 (Cook, J., dissenting). Pursuant to *Guthrie*, a domestic relations court thus has continuing jurisdiction to modify its prior determination of parentage originally determined pursuant to R.C. 3111.02. Although the Ohio Supreme Court greatly expanded the scope of the continuing jurisdiction of a domestic relations court, whether the domestic relations court has continuing jurisdiction is irrelevant to the juvenile court's jurisdiction to determine parentage for a nonparent after the parents' divorce.

{¶19} Importantly, any statutory grant of continuing jurisdiction is necessarily a reference to the jurisdiction originally conferred upon that court. If, for example, the court was granted exclusive original jurisdiction, any grant of continuing jurisdiction for that issue would also be exclusive. *See, e.g.,* R.C. 3127.16 (the court making a child

custody determination consistent with the pertinent statutes has "exclusive, continuing jurisdiction" over that determination).   The domestic relations court, in this instance, shares original jurisdiction over parentage determinations if such a petition is filed during the pending divorce, dissolution, or legal separation proceeding.   R.C. 3111.06(A). The statute does not provide for exclusive original jurisdiction or exclusive continuing jurisdiction over the matter in this instance.   The jurisdiction to resolve the parentage issue remains shared with the juvenile court as established pursuant to R.C. 2151.23(B)(2).   As a result, the continuing jurisdiction vested with the domestic relations court must be considered concurrent with that of the juvenile court.

{¶20} At this point, it should be noted that our decision in *Gatt*, 20 Ohio App.3d 285, 485 N.E.2d 1049, should not be interpreted to support the argument that the domestic relations court has exclusive jurisdiction over parentage determinations once a divorce, dissolution, annulment, or legal separation has been initiated in the domestic relations court.   *See id.* at 289.   Such an interpretation would graft jurisdictional exclusivity onto an otherwise unambiguous statute.   We, therefore, overrule *Gatt* inasmuch as this court stated that a party is required to file a petition to determine paternity in the domestic relations court during the pendency of a divorce, dissolution, or legal separation action.   R.C. 3111.06(A) merely provides jurisdiction to the domestic relations court to determine whether a parent and child relationship exists; it does not confer exclusive jurisdiction for that determination.   Although it is expedient to keep the issue before one court, the legislature has specifically allowed for either court to

determine the issue subject only to the limitations imposed through the jurisdictional-priority rule.

{¶21} Generally, "'[a]s between courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties.'" *State ex rel. Racing Guild of Ohio v. Morgan*, 17 Ohio St.3d 54, 56, 476 N.E.2d 1060 (1985), quoting *State ex rel. Phillips v. Polcar*, 50 Ohio St.2d 279, 364 N.E.2d 33 (1977), syllabus. In this case, the juvenile court determined that it lacked jurisdiction over D.F.'s action because the domestic relations court had already entered a judgment and maintained continuing jurisdiction over the matter. The juvenile court basically referenced the jurisdictional-priority rule by definition. *Morello v. Ferrucio*, 5th Dist. Stark No. 2014CA00139, 2015-Ohio-1370, ¶ 12; *In re Estate of Scanlon*, 8th Dist. Cuyahoga No. 95264, 2011-Ohio-1097, ¶ 21 (jurisdictional-priority rule applies to situations involving concurrent jurisdiction between two divisions of the same court).

{¶22} The juvenile court's conclusion that the domestic relations court's continuing jurisdiction divested the juvenile court of its jurisdiction is an unsupported extension of the jurisdictional-priority rule. "[I]t is a condition of the jurisdictional-priority rule[, however,] that the claims and parties be the same in both cases, so 'if the second case is not for the same cause of action, nor between the same parties, the former suit will not prevent the latter.'" *State ex rel. Dunlap v. Sarko*, 135

Ohio St.3d 171, 2013-Ohio-67, 985 N.E.2d 450, ¶ 10, quoting *State ex rel. Judson v. Spahr*, 33 Ohio St.3d 111, 113, 515 N.E.2d 911 (1987).  Further, "'the jurisdictional priority rule requires that there be two cases *pending*.'"  (Emphasis sic.)  *State ex rel. Vanni v. McMonagle*, 137 Ohio St.3d 568, 2013-Ohio-5187, 2 N.E.3d 243, ¶ 10, quoting *Family Med. Found., Inc. v. Bright*, 10th Dist. Franklin No. 00AP-1476, 2001 Ohio App. LEXIS 2864, *4 (June 28, 2001), *rev'd on other grounds*, 96 Ohio St.3d 183, 2002-Ohio-4034, 772 N.E.2d 1177.  In this case, no action remained pending before the domestic relations court and D.F. was not a party to that proceeding.

{¶23} The fact that the domestic relations court maintained continuing jurisdiction over the divorce matter is therefore irrelevant because the nonparent, D.F., was not a party to the divorce action, notwithstanding the additional fact that he was prohibited from intervening in that action, and that action was no longer pending.[2]  D.F.'s remedy was properly advanced in the juvenile court.  In both *Gatt*, 20 Ohio App.3d 285, 485 N.E.2d 1049, and *State ex rel. Smith*, 110 Ohio App.3d 336, 674 N.E.2d 398, panels of this court held that the juvenile court has jurisdiction over parentage claims brought by

[2] It should also be noted that the "same party rule" as described in our jurisdictional-priority analysis is also the reason that the doctrine of res judicata and the full faith and credit language in R.C. 3111.03(A)(1) do not apply to preclude D.F. from pursuing his claim.  *Holzemer v. Urbanski*, 86 Ohio St.3d 129, 132, 712 N.E.2d 713 (1999) (full faith and credit implicates the doctrine of res judicata because full faith and credit only requires courts to enforce judgments as the other court would enforce);  *Commercial Union Ins. Co. v. Wheeling Pittsburgh Corp.*, 106 Ohio App.3d 477, 487, 666 N.E.2d 571 (2d Dist.1995); *Meenach v. Gen. Motors Corp.*, 891 S.W.2d 398, 401, (Ky.1995), citing *New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947) ("full faith and credit" only refers to giving judgments from other courts as much effect as they have where they are rendered, nothing more).

third parties even after the final judgment of divorce, dissolution, annulment, or legal separation was entered in the domestic relations court. We reaffirm our precedent and hold that the Ohio Supreme Court's decision in *Guthrie,* 84 Ohio St.3d 437, 705 N.E.2d 318, extending the grant of continuing jurisdiction to the domestic relations court over parentage issues, does not divest the juvenile court of its original jurisdiction pursuant to R.C. 2151.23(B)(2). Inasmuch as the juvenile court held that it lacked jurisdiction to address the merits of D.F.'s petition, the court's decision was in error.

{¶24} We acknowledge that our conclusion introduces an unnecessary tension between two courts competing for jurisdiction. It is not, however, for an appellate court to provide jurisdictional exclusivity not otherwise provided for by the legislature — even in the well-intentioned effort to promote the best interest of a child. The legislature granted two divisions of the common pleas court with concurrent jurisdiction over the parent and child relationship determination, and we cannot judicially divest one court of that jurisdiction out of convenience.

{¶25} Finally, and in the alternative to the jurisdictional question, the trial court concluded on the merits that the doctrine of laches precluded D.F. from pursuing his parentage action. Laches is an affirmative defense. It applies where a party fails "'to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.'" *Connin v. Bailey*, 15 Ohio St.3d 34, 35, 472 N.E.2d 328 (1984), quoting *Smith v. Smith*, 107 Ohio App. 440, 443-444, 146 N.E.2d 454 (8th Dist.1957); *see also Sobin v. Lim*, 2012-Ohio-5544, 984 N.E.2d 335, ¶ 17 (8th Dist.).

{¶26} In applying the laches doctrine in this case, the juvenile court presumed that S.W.L. was materially prejudiced by D.F.'s petition. Although S.W.L. raised the doctrine as an affirmative defense in answer to D.F.'s petition, pursuant to Juv.R. 22(C), he never supported the same with an evidentiary or legal foundation. Although the juvenile court ordered the parties to brief some issues, that request was in pertinent part limited to whether T.F. was estopped from supporting D.F.'s claim. Estoppel is a separate and distinct defense from laches: estoppel pertains to an individual's reliance on another's action, while laches pertains to an unreasonable delay in asserting a known claim. Further, in S.W.L.'s motion to dismiss, the only issue raised dealt with service of the petition. In short, the juvenile court merely presumed the evidence existed on an issue not yet advanced by S.W.L. For this reason, any determination as to the applicability of the laches doctrine was premature and in error.[3]

{¶27} In addition to being premature, the dissent's conclusion — that D.F. was not entitled to pursue his paternity action pursuant to R.C. 3111.381(E) because "there is nothing in the record that indicates that D.F. requested an administrative decision of the existence or nonexistence of a parent and child relationship prior to filing the action" — is improper for two other reasons. First, the trial court concluded it lacked jurisdiction to allow the parties to create the very record found to be missing. Second, this issue was not briefed by the parties. *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19

---

[3] We can render no merit determination regarding the applicability of the doctrine in light of the record.

N.E.3d 888, ¶ 21 (appellate courts cannot sua sponte decide cases on the basis of unbriefed issues). The sole issue before this court is whether the juvenile court possessed jurisdiction to consider the merits of D.F.'s petition. The failure to request an administrative decision is not jurisdictional. *See, e.g., State ex rel. Jackson Cty. Child Support Enforcement Agency v. Long*, 4th Dist. Jackson No. 03CA1, 2004-Ohio-2184, ¶ 26 (failure to obtain administrative decision of parentage did not deprive trial court of jurisdiction to entertain action).

**{¶28}** We understand the dissent's frustration. Nevertheless, we are not concerned about the outcome of the juvenile court action only because the juvenile court has not rendered a decision on the merits. The dissent is entirely premised on a speculative outcome that may never come to fruition. Our review is limited to the issues presented. On the sole issue in this appeal, whether the juvenile court appropriately declined to exercise its jurisdiction to determine a parent and child relationship for a child born out of wedlock, we must conclude the court erred.

**{¶29}** The decision of the juvenile court is reversed, and the matter is remanded for further proceedings on D.F.'s petition.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. A certified copy of

this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

PATRICIA ANN BLACKMON, J.,
MARY J. BOYLE, J.,
LARRY A. JONES, SR., A.J.,
KATHLEEN ANN KEOUGH, J.,
MARY EILEEN KILBANE, J.,
ANITA LASTER MAYS, J.,
TIM McCORMACK, J., and
MELODY J. STEWART, J., CONCUR

EILEEN A. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION in which FRANK D. CELEBREZZE, JR., J., and EILEEN T. GALLAGHER, J., CONCUR

EILEEN A. GALLAGHER, J., DISSENTING:

{¶30} I respectfully dissent.   For the reasons set forth below, I would find that the juvenile court lacks jurisdiction over D.F.'s paternity action and affirm the trial court's dismissal of his complaint.

{¶31} As I read the majority's decision, an alleged father can file a paternity action (1) in the juvenile court at any time regardless of whether an action for divorce, dissolution or legal separation is pending and (2) in the domestic relations court (a) during the pendency of an action for divorce, dissolution or legal separation or (b) if the domestic relations court makes a paternity determination as part of a divorce, dissolution or legal separation, anytime thereafter pursuant to the court's exercise of its continuing

jurisdiction. I do not believe this is a proper interpretation of R.C. 2151.23(B)(2), 3111.06(A), 3111.16 and 3111.381 — the provisions governing the jurisdiction of the domestic relations court and juvenile court over paternity actions.

{¶32} Although in analyzing statutory provisions, we must ordinarily "presume the legislature means what it says" and cannot by our decisions add or delete words or "amend statutes to provide what we consider a more logical result," *State v. Virasayachack*, 138 Ohio App.3d 570, 574, 741 N.E.2d 943 (8th Dist.2000); *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 524 N.E.2d 441 (1988), paragraph three of the syllabus, we are also obliged, when construing a statute, to presume that the legislature intended a "just and reasonable result." *See* R.C. 1.47(C) ("In enacting a statute, it is presumed that * * * [a] just and reasonable result is intended."); *see also State ex rel. Dispatch Printing v. Wells*, 18 Ohio St.3d 382, 384, 481 N.E.2d 632 (1985) ("It is an axiom of judicial interpretation that statutes be construed to avoid unreasonable * * * consequences.").

{¶33} To that end, where doubt or ambiguity exists with respect to the interpretation or application of a statute,[4] we must read the statute in pari materia with

---

[4] That doubt or ambiguity exists with respect to the interpretation and application of the statutes at issue here is supported by the fact that the majority's decision necessitates overturning an interpretation of R.C. 3111.06(A) that has existed for more than 30 years. Although the majority states that it "reaffirm[s] our precedent" in *Gatt v. Gedeon*, 20 Ohio App.3d 285, 485 N.E.2d 1059 (8th Dist.1984), and *State ex rel. Smith v. Smith*, 110 Ohio App.3d 336, 674 N.E.2d 398 (8th Dist.1996), in fact, the majority's opinion overrules those cases in significant part. In *Gatt* and *Smith*, this court interpreted the final sentence of R.C. 3111.06(A) as *requiring* paternity actions filed *during* divorce proceedings to be filed in domestic relations court and not juvenile court and as *requiring* paternity actions filed *after the entry of a final divorce decree* to be filed in juvenile court

other statutes relating to the same subject matter and construe them together, giving "such a reasonable construction as to give the proper force and effect to each and all such statutes * * * viewed in a manner to carry out the legislative intent * * *." *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, ¶ 45, quoting *United Tel. Co. of Ohio v. Limbach*, 71 Ohio St.3d 369, 372, 643 N.E.2d 1129 (1994); *see also* R.C. 1.49 ("If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters: * * * [t]he object sought to be attained; * * * [t]he circumstances under which the statute was enacted; * * * [and] [t]he consequences of a particular construction * * *.").

{¶34} Furthermore, as this court stated in *Cuyahoga Cty. Support Enforcement Agency v. Lozada*, 102 Ohio App.3d 442, 657 N.E.2d 372 (8th Dist.1995):

> The business of writing statutes is often a complex and cumbersome affair. In determining the intent of the General Assembly, it is to be presumed that a code of statutes relating to one subject is governed by one spirit and policy and intended to be consistent and harmonious in its several parts. * * *
>
> The underlying spirit and policy of * * * R.C. Chapter 3111 [is] concern for "the best interest of the child." *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992).

---

and not domestic relations court. *Gatt* at 288-289; *Smith* at 339. Although neither decision considered the effect of the domestic relations court's continuing jurisdiction under R.C. 3111.16 and both cases were decided prior to the Ohio Supreme Court's decision in *Cuyahoga Support Enforcement Agency v. Guthrie*, 84 Ohio St.3d 437, 444, 705 N.E.2d 318 (1999), under the approach adopted by this court in *Gatt* and *Smith*, although both the domestic relations court and the juvenile court had jurisdiction over paternity actions, only one court was deemed to be the proper court to consider a paternity issue at any given time. Under the majority's approach, both the juvenile court and domestic relations court can consider paternity issues at the same time, even if paternity was previously determined by the domestic relations court.

*Lozada* at 450.

{¶35} In this case, D.F. seeks an order establishing himself as S.K.L.'s natural biological father, i.e., her legal father. S.K.L., however, already has a legal father as determined by the domestic relations court, as well as a legal mother. It does not appear that Ohio law currently supports recognition of more than two legal parents of one child. Thus, D.F. seeks an order that would — in effect, if not directly — disestablish S.W.L. as S.K.L.'s legal father or would conflict with the prior determination by the domestic relations court that S.W.L. is S.K.L.'s legal father.

{¶36} R.C. 2151.23(B)(2) provides:

> Except as provided in divisions (G) and (I) of section 2301.03 of the Revised Code, the juvenile court has original jurisdiction under the Revised Code * * * [t]o determine the paternity of any child alleged to have been born out of wedlock pursuant to sections 3111.01 to 3111.18 of the Revised Code.

R.C. 3111.06(A) provides, in relevant part:

> Except as otherwise provided in division (B) or (C) of section 3111.381 of the Revised Code, an action authorized under sections 3111.01 to 3111.18 of the Revised Code may be brought in the juvenile court or other court with jurisdiction under section 2101.022 or 2301.03 of the Revised Code of the county in which the child, the child's mother, or the alleged father resides or is found   * * *.

> If an action for divorce, dissolution, or legal separation has been filed in a court of common pleas, that court of common pleas has original jurisdiction to determine if the parent and child relationship exists between one or both of the parties and any child alleged or presumed to be the child of one or both of the parties.

R.C. 3111.16, which addresses continuing jurisdiction, provides:

The court has continuing jurisdiction to modify or revoke a judgment or order issued under sections 3111.01 to 3111.18 of the Revised Code to provide for future education and support and a judgment or order issued with respect to matters listed in divisions (C) [provisions in judgments or orders "concerning the duty of support * * * or any other matter in the best interest of the child"] and (D) [addressing periodic payments of support and the purchase of an annuity in lieu of periodic payments] of section 3111.13 and division (B) of section 3111.15 of the Revised Code [addressing to whom the court may order support payments be made], except that a court entering a judgment or order for the purchase of an annuity under division (D) of section 3111.13 of the Revised Code may specify that the judgment or order may not be modified or revoked.

{¶37} *See also Cuyahoga Support Enforcement Agency v. Guthrie*, 84 Ohio St.3d 437, 443-444, 705 N.E.2d 318 (1999) (interpreting R.C. 3111.16 as providing the court that makes an initial paternity determination "continuing jurisdiction over all judgments and orders issued in accordance with R.C. 3111.01 to [3111.18], which includes judgments or orders that concern the duty of support or involve the welfare of a minor child," including the court's prior paternity determination); *Broxterman v. Broxterman*, 101 Ohio App.3d 661, 663, 656 N.E.2d 394 (1st Dist.1995) (legal custodians of a minor child had the right to bring a paternity action in domestic relations court after paternity had been previously determined in a final decree of divorce; because other post-decree matters were pending in the domestic relations court, the domestic relations court retained jurisdiction to hear the matter after the final divorce decree had been entered); R.C. 3111.381(E) ("If an action for divorce, dissolution of marriage, or legal separation * * * has been filed in a court of common pleas and a question as to the existence or nonexistence of a parent and child relationship arises, the court in which the original action was filed shall retain jurisdiction to determine the existence or nonexistence of the

parent and child relationship without an administrative determination being requested from a child support enforcement agency.").[5]

{¶38} Reading these provisions in pari materia with the other provisions of Chapter 3111 and considering both the significance of a paternity determination and the overriding purpose and policy of R.C. Chapter 3111, i.e., to act in the "best interests of the child," I believe that Ohio's parentage statute should be interpreted as granting exclusive continuing jurisdiction to the domestic relations court to resolve an issue of a child's paternity after the domestic relations court makes an initial paternity determination with respect to that child.

{¶39} The majority cites *In re Poling*, 64 Ohio St.3d 211, 594 N.E.2d 589 (1992), in support of its interpretation of R.C. 2151.23(B)(2), 3111.06(A) and 3111.16 as granting concurrent, non-exclusive jurisdiction over paternity determinations to both the

---

[5] The majority claims that the fact the domestic relations court retained continuing jurisdiction over the paternity determination in this case is "irrelevant" because as of the time D.F. filed his paternity action, "no action remained pending before the domestic relations court" and D.F. was not a party to that action and "was prohibited from intervening in that action." This is not correct. First, although the divorce decree was entered in 2007, post-decree proceedings are still pending; the domestic relations court continues to address issues relating to the support of, and allocation of parental rights and responsibilities with respect to, S.K.L.

Second, D.F. was not required to intervene in the divorce action in order to have his paternity action heard by the domestic relations court and was never prohibited from intervening in the post-decree proceedings; he never even filed a motion to intervene in the domestic relations action. Although the juvenile court indicated in its March 13, 2014 journal entry that D.F. had attempted to intervene on a post-decree basis in the domestic relations action, there is no indication that D.F. ever filed a motion to intervene in that case or otherwise filed a paternity action in the domestic relations court. Rather, the mother, T.F., filed a motion seeking to having D.F. joined as a third-party defendant to the post-decree proceedings. That motion was denied after the domestic relations court concluded that the paternity of S.K.L. had been established in the divorce decree and was res judicata as to T.F.

juvenile court and the domestic relations court where there is an existing paternity determination by the domestic relations court. That case is distinguishable. In *Poling*, the issue was whether the juvenile court had jurisdiction to modify the legal custody of two children who were the subject of a custody order issued by the domestic relations court after the children were determined by the juvenile court to be dependent. *Id.* at 215. The court held that the juvenile court had concurrent jurisdiction to modify custody of the children but that it "must do so in compliance with R.C. 2151.23(F)(1)." *Id.* at 215-216. Under R.C. 2151.23(F)(1), the juvenile court was required to "exercise its jurisdiction in child custody matters in accordance with* * * [R.C.] 3109.04," which specifies the circumstances under which an existing custody order entered by the domestic relations court is subject to modification. *Id.* As the court explained:

> The issue before this court is whether a juvenile court has jurisdiction to consider the question of custody of dependent children, where custody has previously been determined and granted under a divorce decree pursuant to R.C. 3109.04. * * *
>
> Our analysis begins with R.C. 2151.23, which governs the jurisdiction of the juvenile court and provides in pertinent part:
> "(A) The juvenile court has exclusive original jurisdiction under the Revised Code:
>
> (1) Concerning any child who on or about the date specified in the complaint is alleged to be a[n] * * * abused, neglected, or dependent child;
>
> (2) To determine the custody of any child not a ward of another court of this state[.]" * * *
>
> [P]ursuant to R.C. 2151.23(A), the juvenile court has jurisdiction to determine the custody of a child alleged to be abused, neglected, or dependent when not the ward of any court in this state. Under our interpretation of subdivision (A)(2) of R.C. 2151.23, this jurisdiction

includes children subject to a divorce decree granting custody pursuant to R.C. 3109.04.

While clarifying the jurisdiction of the juvenile court under R.C. 2151.23, we recognize some confusion exists in light of the continuing jurisdiction of the domestic relations court which awards custody in divorce cases under R.C. 3109.04. * * * [A] court which renders a custody decision in a divorce case has continuing jurisdiction to modify that decision. However, the juvenile court has jurisdiction to make custody awards under certain circumstances. Hence, for the purposes of deciding custody where there has been a prior divorce decree, these courts can accurately be said to have concurrent jurisdiction. In other words, the juvenile court may entertain and determine custody of children properly subject to its jurisdiction, even though there has been a prior divorce decree granting custody of said children to a parent pursuant to R.C. 3109.04.

* * *

However, when a juvenile court seeks to exercise its concurrent jurisdiction in a situation such as before us, i.e., where there is an existing custody decree, the juvenile court must do so in compliance with R.C. 2151.23(F)(1). This statute requires that "[t]he juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04, 3109.21 to 3109.36, * * * of the Revised Code." * * * Therefore, when a juvenile court makes a custody determination, it must do so "in accordance with R.C. 3109.04."

We view this legislative scheme as a means of granting the juvenile court jurisdiction to make particularized determinations regarding the care and custody of children subject to its jurisdiction, while respecting the continuing jurisdiction of the domestic relations or common pleas court that makes a custody decision in a divorce case. Stated otherwise, when a domestic relations or common pleas court makes a custody decision ancillary to a divorce proceeding, that court must comply with the strictures contained in R.C. 3109.04. Likewise, under R.C. 2151.23(F)(1), a juvenile court must consider the dictates of R.C. 3109.04 when exercising its custody jurisdiction. The juvenile court's custody decision is thus harmonized with the prior custody determination by the requirement in R.C. 2151.23(F)(1) that the juvenile court exercise its custody jurisdiction in accordance with R.C. 3109.04.

*Id.* at 213-216.

**{¶40}** The court further noted that policy considerations supported its conclusion that the juvenile court had jurisdiction to make the custody determination in that case:

> Both appellant and the guardian ad litem advance judicial economy arguments to buttress their assertion that the juvenile court has jurisdiction to decide the custody issue in this case. They contend the juvenile court is in a position to hear all the relevant evidence concerning the child's environment and needs, and that it is a waste of judicial time and resources to then require additional hearings in the original divorce court to determine custody of the children.
>
> We agree. The issues and facts relating to the disposition or custody of these children will have been examined in the juvenile court. In deciding how to best address the needs and interests of the children, the juvenile court would have before it home investigations germane to the case, psychological assessments, special educational or treatment concerns, relevant testimony from the pertinent parties, and the recommendation of both the county children services agency and the guardian ad litem. To now hold that the juvenile court does not have jurisdiction would require the original divorce court to possibly rehear the entire case, at a considerable cost not only to the judicial system but more importantly to the parties involved. This is especially true with respect to children whose well-being mandates an effective, timely means of resolving their care and custody.

*Id.* at 215-216.[6]

**{¶41}** In sharp contrast to the statutes the court applied in *Poling*, i.e., R.C. 2151.23(F)(1) and 3109.04, which expressly contemplated the juvenile court's modification of custody determinations made by the domestic relations court in appropriate circumstances, here, there is nothing in the statutes at issue that authorizes the

---

[6] The majority also cites *In re Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241. That case, which involved the juvenile court's jurisdiction to give effect to a voluntary shared custody agreement between the children's mother and their primary caregiver where no prior custody determination had been made by the domestic relations court, is not relevant to the issues here.

juvenile court to modify or reconsider a paternity determination previously made by the domestic relations court or that would serve to "harmonize" a subsequent paternity determination made by the juvenile court with a paternity determination previously made by the domestic relations court. Rather, in this case, if the juvenile court were to have jurisdiction over D.F.'s paternity action and were to award D.F. the relief he seeks, S.K.L. would have two legal fathers — one declared by the domestic relations court and one declared by the juvenile court — in addition to a legal mother.

{¶42} The majority ignores the practical effects of its ruling other than to acknowledge that its interpretation introduces "an unnecessary tension between two courts competing for jurisdiction," downplaying those effects as matters of "convenience." However, I would respectfully submit that avoiding potentially conflicting determinations of a child's legal father implicates much more than "convenience."

{¶43} When dealing with matters involving children, I believe we must always be guided by the mandate to act in the best interests of the child — even when faced with issues of statutory construction. *See Lozada*, 102 Ohio App.3d at 450. There are few areas where matters of stability, consistency and uniformity are more important than the life of a child. In my view, interpreting the relevant statutory provisions as requiring that D.F.'s paternity action be heard by the domestic relations court that made the initial determination of S.K.L.'s paternity is not only consistent with established principles of statutory construction but would also promote judicial economy, avoid piecemeal rulings

and the possibility of inconsistent or conflicting results and facilitate the fashioning of a single, comprehensive resolution that addresses all aspects of this family's situation and circumstances in the best interests of the child. These are many of the same policy considerations the Ohio Supreme Court cited in support of its decision in *Poling*. *See Poling*, 64 Ohio St.3d at 215-216, 594 N.E.2d 589. I do not find anything in R.C. Chapter 3111 or elsewhere in the Ohio Revised Code that suggests a contrary result was intended by the legislature. *See* R.C. 1.49.

**{¶44}** Accordingly, I would affirm the trial court's dismissal of D.F.'s complaint.

**{¶45}** Furthermore, I question the majority's conclusion that "D.F.'s remedy was properly advanced in the juvenile court" in light of R.C. 3111.381. R.C. 3111.381(A) provides:

> Except as provided in divisions (B), (C), (D), and (E) of this section, no person may bring an action under sections 3111.01 to 3111.18 of the Revised Code unless the person has requested an administrative determination under section 3111.38 of the Revised Code of the existence or nonexistence of a parent and child relationship.

R.C. 3111.381(C) provides, in relevant part:

> An action to determine the existence or nonexistence of a parent and child relationship may be brought by the putative father of the child in the appropriate division of the court of common pleas in the county in which the child resides, without requesting an administrative determination, if the putative father brings the action in order to request an order to determine the allocation of parental rights and responsibilities. * * *

R.C. 3111.381(E) provides, in relevant part:

> If an action for divorce, dissolution of marriage, or legal separation * * * has been filed in a court of common pleas and a question as to the existence or nonexistence of a parent and child relationship arises, the court in which

the original action was filed shall retain jurisdiction to determine the existence or nonexistence of the parent and child relationship without an administrative determination being requested from a child support enforcement agency.[7]

{¶46} In his complaint, D.F. sought only to have himself "deem[ed] the natural biological father" of S.K.L. He did not "request an order to determine the allocation of parental rights and responsibilities." There is nothing in the record that indicates that D.F. requested an administrative determination of the existence or nonexistence of a parent and child relationship under R.C. 3111.38 prior to filing this action. Although, in the absence of such a request, the domestic relations court "retain[s] jurisdiction to determine the existence or nonexistence of the parent and child relationship without an administrative determination being requested," under a plain reading of R.C. 3111.381(E), D.F. was not entitled to bring his paternity action in juvenile court.

---

[7] R.C. 3111.381(B) and (D) are not applicable to the situation here.